## WRIGHT *v.* DAVIS, sheriff.

1. The return to the writ of habeas corpus may be amended at any time before the final disposition of the cause.

2. While it is necessary that all allegations of fact in the return should be sworn to, it is not necessary that an amendment thereto, containing mere formal averments of legal conclusions upon the facts stated in the return, should be under oath.

3. Where a party presents a petition praying for a writ of habeas corpus to a person described therein as the judge of a named court, and upon such application procures the issuance of the writ, he should not be allowed, upon the hearing, to deny the legal existence of such court and such judge ; and this is true notwithstanding the petition alleges that the legislative act creating the court is unconstitutional, null, and void. The petitioner may abandon his proceeding altogether by voluntarily dismissing the same ; but so long as he insists upon being heard on his petition, he will be estopped from denying the lawful existence of such court and such judge. Although the judge to whom the petition was addressed in the present case, and who heard and decided the case arising therefrom, may have entertained and passed upon the above-indicated ground of the petition, this court will not consider it.

4. Even if " due process of law " requires that every accusation upon which a person is tried for a misdemeanor, in any city court created by special legislative enactment, shall be based upon an affidavit, one who is tried in such a court upon an accusation which is founded upon an affidavit is not deprived of " due process of law " merely because the act creating the court fails to provide that accusations therein shall be based upon affidavits. There is no constitutional provision, which would prevent the legislature, when creating a city court, from providing for the trial of misdemeanor cases therein upon a mere accusation preferred and signed officially by the prosecuting officer of such court.

5. An affidavit upon which an accusation in the city court of Wrightsville is based, is not void because made before and attested by the clerk of such court.

Argued June 21,—Decided July 14, 1904.

Habeas corpus.    Before Judge Faircloth.    City court of Wrightsville.    May 13, 1904.

*Martin & Martin* and *Arthur S. Bussey*, for plaintiff.

*B. B. Blount, A. L. Hatcher*, and *James K. Hines*, for defendant.

FISH, P. J.    1.    Upon the hearing of this, a habeas corpus case, the petitioner for the writ moved to discharge and release the person in custody, upon the ground that the return of the sheriff to the writ failed to allege that the legal proceedings under which the prisoner was restrained of his liberty were had in and by a court of competent jurisdiction of the person and subject-matter. The court, while holding that the objection to the return was well taken, allowed the sheriff to amend the return so as to meet the objection.    This ruling allowing the return to be amended was made over the objection of the petitioner, that the amendment came too late, and that the point made was fatal to the return. In the bill of exceptions error is assigned upon this ruling.    There was no error in it.    Aside from our general and liberal rule as to the amendment of pleadings (Civil Code, § 5097), it is well established that a return to the writ of habeas corpus may be amended at any time before the final disposition of the cause. Church on Habeas Corpus, § 155 ; 9 Enc. Pl. & Prac. 1039 ; Watson's case, 9 Ad. & El. 731 ; Matter of Hopson, 40 Barb. (N. Y.) 40 ; Matter of Power, 2 Russ. 583 ; Warman's case, 2 W. Bl. 1204 ; Anonymous case, 1 Mod. 103 ; Matter of Clarke, 2 Ad. & El. N. S. 619, 42 Eng. C. L. Rep. 835 ; Patterson *v.* State, 49 N. J. L. 327.    It would be strange indeed if such were not the rule, especially where the object of the party at whose instance the writ is issued is to procure the release of a person held by a public officer, such as a sheriff, jailer, etc., under a warrant, commitment, or sentence.    It would be subversive of public justice to establish the rule that the detention or discharge of such a person depends entirely upon the original return made by the officer responding to the writ.    In a proper case of this character, the court may not only allow, but, if necessary, order the return to be amended.    In the Matter of Power, cited above, where it was held that the chancellor could and should order the jailer to amend his return, Lord Eldon observed:    " It would be a strong thing to say, that the merits of a committal are to be tried

merely by the return to the writ, however erroneous that return may be. If such were the rule, then the person, who makes the return to the writ, would in fact, by making a return short of the truth, assume to himself the power of discharging a prisoner who may have been properly committed." Referring to these observations, Lord Denman, C. J., in Clarke's case, supra, said: "That is plain common sense: and we should be wanting to it if we did not allow an amendment here in the form proposed," etc. So, Reed, J., in Patterson *v.* State, supra, tersely and forcibly said: "But the mere failure of [the] custodian to return a warrant, or the fact that his return is imperfect, does not operate to discharge the prisoner. The recognition of such a rule would place in the hands of negligent or corrupt jailers the power to empty a penitentiary." We are not to be understood as ruling that it was necessary, in this case, for the sheriff's return to be amended in the respect above indicated; what we do rule is, that, whether it was or was not necessary, there was no error in allowing the return to be amended.

2. Another objection urged at the time the respondent was allowed to amend his return, and insisted upon here, was that the interlineations made in the return by the amendment were not sworn to. We do not think there is any merit in this objection. The original return was sworn to, as the statute required. It was clearly necessary, under the statute, that the allegations of fact in the return should be sworn to, but we do not think that formal averments of legal conclusions upon the facts, such as the lawful jurisdiction of the court under whose judgment the prisoner was held, etc., required verification by affidavit. If these conclusions were correct, swearing to them would not add to their force, and if they were erroneous, the fact that they were sworn to could not strengthen them in the least. They would have to stand or fall solely upon their merit, or want of merit, as legal propositions.

3. It clearly appeared, upon the hearing of the habeas corpus case, that the prisoner whose discharge was sought by the applicant for the writ had been tried, convicted, and sentenced, in the city court of Wrightsville, for the offense of malicious mischief, and that his imprisonment or detention was under and by virtue of such sentence. The main ground upon which it was claimed, in the petition for the writ, that he should be discharged was, that

the act of the legislature purporting to create thé city court of Wrightsville was, for numerous alleged reasons, absolutely uncon-stitutional, null, and void. The petitioner planted his case mainly upon the broad proposition, that the act creating the so-called city court was absolutely void, by reason of its unconstitutionality; that consequently there was no such court as the city court of Wrightsville in lawful existence; that, therefore, all the proceedings had in the so-called court were mere nullities, and hence the prisoner was illegally restrained of his liberty. The petition for the writ of habeas corpus was addressed: "To the Honorable William Faircloth, Judge of the city court of Wrightsville;" and he, as such judge, at the instance of the petitioner, issued the writ and tried the case arising therefrom. So the petitioner occupied the anomalous and inconsistent position of applying for judicial relief to the judge of a court which he claimed, in his petition, had no legal existence. He voluntarily invoked the jurisdiction and power of the judge of the city court of Wrightsville and, at the same time, denied the legal existence of such a court and such a judge. If his contention that the act purporting to create the city court of Wrightsville was absolutely void, was sound, then the writ of habeas corpus which he obtained was as much a nullity as the proceedings which he attacked in his petition. His position seemed to be, that for the purpose of issuing this high writ of liberty, compelling obedience to the peremptory command which it contained, trying and determining the case arising therefrom, and enforcing the judgment thereon, there was such a judicial officer as the judge of the city court of Wrightsville, and hence such a court, but for all other purposes there was no such judge and no such court. It seems to us that in this proceeding he was clearly estopped from contending that there was no such court as the city court of Wrightsville. Although Judge Faircloth may have entertained and passed upon the grounds of the petition attacking the constitutionality of the act creating the court, we think he might well have declined to issue the writ, unless they were stricken, or have refused at the hearing to consider them. We certainly do not feel called upon to consider them upon their merits. Suppose we should do so, and should reach the conclusion that the act is, as contended, absolutely void, what would be the result? We would have before us a case over which we would

have no jurisdiction whatever, and the writ of error would have to be dismissed.    This court has no original jurisdiction, but, under the constitution, is simply a court for the correction of errors from the superior courts, and from the city courts of Atlanta and Savannah, and other like courts established by the legislature; and if the legislature has not established a court known as the city court of Wrightsville, we would have no jurisdiction of a case tried before an individual claiming to be the judge of such a court.    There may be a de facto judge of a de jure court, but in our opinion there can be no such thing as a de facto court.    We know of no such anomaly in law as a de facto judge of a de facto court.    ·Before there can be a de facto officer, there must be a de jure office for him to fill.    "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."    Norton *v.* Shelby County, 118 U. S. 425.    If the petitioner wished, through the writ of habeas corpus, to test the legal existence of the city court of Wrightsville, he could have done so by applying to the judge of the superior courts of the circuit, or perhaps to the ordinary of Johnson county, either of whom has authority to issue the writ of habeas corpus, and not to the "judge of the city court of Wrightsville."    As it is, the contention of the plaintiff in error, if entertained and found to be sound, would logically and inevitably lead to the conclusion that this proceeding was void ab initio, and consequently that everything therein subsequent to the issuance of the writ, including the suing out of the writ of error to this court, was likewise void    If there was no city court of Wrightsville, there was no judge of such court, and consequently the so-called writ of habeas corpus was issued, the case tried, the "judgment" rendered, and the bill of exceptions certified and signed by a mere private individual, from whom no writ of error lies to this court.    If the only point made in the petition for the writ of habeas corpus, or insisted upon here, was that the act of the legislature purporting to create the city court is null and void because of its unconstitutionality, we should, without considering this question, dismiss this writ of error.    We should do this for two reasons: first, because a party ought not to be allowed to deny the legal existence of a judicial tribunal in a proceeding which he has voluntarily in-

stituted before it, for relief dependent upon its power as such a tribunal lawfully constituted; second, because this court will not, at the instance of a plaintiff in error, waste its valuable time in considering a question which, if resolved in favor of his contention, would necessarily result in a dismissal of the writ of error, and if decided against such contention, would result in an affirmance of the judgment of the court below. Perhaps we ought to dismiss the writ of error anyway, upon the ground that the petitioner in the court below and plaintiff in error here denies that the court from which he is seeking relief has any legal existence, instead of simply declining, as we do, to consider whether this contention is true or not.

4. One of the grounds in the petition for habeas corpus was: "That the said Jim Wright has been deprived of due process of law, and the equal protection of the laws, because he was tried and convicted on an illegal accusation, and without accusation, the pretended accusation having been drawn under a law which does not provide that it shall be based on affidavit, information under oath, or accusation, etc.; and the same having been illegally based on a pretended affidavit made before the clerk of the city court of Wrightsville, instead of before any judicial officer, and which said affidavit bears no evidence of ever having been filed in court, or with the prosecuting officer of said city court of Wrightsville." As we understand the main complaint here, it is this, that inasmuch as the act creating the city court, defining its jurisdiction, etc., does not provide that an accusation in such court, charging the person accused with a misdemeanor, shall be based upon an affidavit, therefore the accusation upon which Jim Wright was tried and convicted in that court, although actually based on an affidavit, was void. If due process of law required that one tried in this city court for a misdemeanor, without indictment by a grand jury, should be tried upon an accusation based on an affidavit, then the accused was not deprived of due process of law, for he was so tried. If this was due process of law, the mere fact that the act creating the city court did not provide for it would make no difference in this case. Accepting the petitioner's construction as to what would constitute due process of law as being correct, the case stands this way: the prisoner was tried and convicted by due process of law, but the

act authorizing his trial in the court in which he was tried did not provide for due process of law. From this it seems that the alleged-defect in the act as to the procedure to be adopted for the trial of misdemeanor cases was cured by the procedure actually adopted in this case. There is no constitutional provision which prevents the legislature, when creating a city court, from providing for the trial of misdemeanor cases therein upon an accusation signed by the prosecuting officer of the court, unsupported by a precedent affidavit. Under the common law, from which most of our ideas of "due process of law" are derived, an information lies for all misdemeanors, and an information by the attorney or solicitor-general, unlike an indictment, which is sanctioned by the oath of the grand jury, is the mere allegation of the prosecuting officer by whom it is preferred, and the only sanction which it can be said to have is his oath of office. Clark's Crim. Law, 127, 128 ; Bish. New Crim. Proc. § 141 (2). Speaking of the term "accusation" as applied to criminal cases, Mr. Justice Cobb, in *Gordon* v. *State*, 102 *Ga.* 679 said : "The term, as used in our law in reference to trials in courts having jurisdiction of misdemeanor cases, is but the equivalent of an information at common-law." Although the general law for the establishment of "city courts" upon the recommendation of grand juries provides that accusations in such courts shall be based on affidavits, and this is also true with reference to the county court statute contained in the Civil Code, yet so far as city courts created by special legislative enactment are concerned, there is no general law upon the subject. While it may be, and doubtless is, both usual and wise, in acts creating this class of city courts, to provide that accusations therein shall be founded upon affidavits, yet, as said by the learned Justice who delivered the opinion in *Gordon* v. *State*, supra, "there is no general law of force in this State in reference to the jurisdiction, powers, procedure, and practice in city courts, and . . city courts are expressly exempted from the provisions of the constitution which require uniformity in regard to such matters. Art. 6, sec. 9. par. 1 (Civil Code, § 5859) ; *Adam* v. *Cohen*, 84 *Ga.* 725."

5. The fact that the affidavit upon which the accusation was based was made before the clerk of the city court is of no consequence. Section twelve of the act creating the court provides that

the clerk of the court shall have power to administer all oaths and do all other acts pertaining to his office as such officer of the superior court may do. Acts 1899, p. 432. Clerks of the superior courts have authority " to administer oaths and take affidavits in all cases permitted by law, or where the authority is not confined to some other officer." Civil Code, § 4362, par 1. Of course, there is nothing in the point that the affidavit bore no evidence of having been filed in court, as it is admitted that the accusation was founded on this affidavit; besides, it was also admitted, "That the affidavit on which the accusation . . . was based was attached by being pinned to the face of the accusation, and the endorsement of filing was on the accusation, *and included the affidavit.*"

*Judgment affirmed. All the Justices concur.*