HARWELL *et al. v.* GAY *et al.*

No. 12208. APRIL 12, 1938.

*R. C. Jenkins,* for plaintiffs.

*Quillian L. Bryant* and *Phillips & Abbot,* for defendants.

ATKINSON, Presiding Justice. C. G. Harwell and his wife made application for the writ of habeas corpus for custody of their minor daughter, Verna Harwell, fourteen years of age, alleged to be illegally detained by Ben Gay and his wife. A rule was duly issued and served. The respondents made return by answer admitting custody of the child and alleging a right thereto. The answer was twice amended. The petitioners demurred to the answer as amended, on general and special grounds. The demurrer was overruled. The case proceeded to trial before the judge upon consent that he pass upon all questions of law and fact. After introduction of evidence, custody of the child was awarded to the respondents. The plaintiffs excepted to that judgment as contrary to the law and evidence, and assigned error also on the overruling of the demurrer.

It was alleged in the petition that the respondent, wife of Ben Gay, is the aunt of the child, and that neither of the respondents had any legal or moral right to her custody, but petitioners have such right in virtue of their parental relation; that the child went to the home of respondents on a visit and when the visit "was out" the respondents without cause refused to allow the child to return home to her parents, but continued to retain the child at their home without any right to do so by contract or otherwise. It was further alleged that while petitioners "are poor people, without large means, . . they have always given said child

every advantage that they were financially able to give to her."
The original answer contained the following: "Mrs. C. G. Harwell,
the mother of Verna Harwell, came to the home of the defendants
and brought the child . . and . . gave the said Verna Har-
well to the defendants with the knowledge and approval of C. G.
Harwell. The . . home of Mr. and Mrs. C. G. Harwell is not
proper to rear the said Verna Harwell in, nor have the plaintiffs
proper food or clothing for their children to eat, nor beds to sleep
on, nor bed clothing for same. The . . moral conduct of Mr.
C. G. Harwell is not sufficient to raise the said Verna Harwell up
in. The defendants . . are well fixed financially and are able
to give the said Verna Harwell the advantages of life. And . .
they are now sending the said Verna Harwell to school." By
amendment it was alleged: "Defendants produce, and have now
before the court, the body of the minor child, Verna Harwell.
. . The parental power of the plaintiffs over the said minor child
have been forfeited by: 1st. Their voluntary contract releasing the
said rights to the defendants. 2nd. By the failure of the father
of the said minor child to provide necessaries for said child. 3d.
By the cruel treatment of the child by said child's father. . .
The petitioner, Mrs. C. G. Harwell, came to the home of the de-
fendants, bringing the child with her, and consented and requested
the defendants to keep the said child, and raise it, due to the fact
that her husband failed to do so, and due to the cruel treatment
of the child by her husband, as hereinafter shown. . . The pe-
titioner, C. G. Harwell, acquiesced in what the child's mother had
done, for more than thirty days before entering any objection.
His objections, now raised, are of no legal significance, for the
reason that he is insane, of unsound mind, and wholly incompe-
tent mentally to exercise the rights and duties of parental control.
. . The father, and parents of the said minor child, have failed
and now fail to provide the necessaries for the said child. Before
she came to the defendants she was dependent entirely upon her
own childish efforts for her support, upon public charity, and was
approaching a condition of starvation, due to the said failure on
the part of her father. In her desperation, after earning a few
dollars by day work of her own, she purchased a bus ticket and
set out to the defendants' home. Her mother joined her at Au-
gusta, Georgia, and came on with her to the defendants' home and

expressed herself as being willing and desirous of her remaining with the defendants. . . The plaintiffs have six children, and due to the failure of C. G. Harwell to provide for his home, and the resulting poverty of the family, they live in a little two-room house in the country, all of the entire family having to sleep in one room and in two beds. This house is in a dilapidated condition, having no widow glass, and the front porch being gone, except for one board from the steps to the door for entrance. The total covering for the family, of a warm nature in the winter, consists of two quilts. The mother's health is not good, and it is frequently necessary for this minor child to cook whatever food she has to eat, and to obtain same by her own efforts and from charity. . . The acts of petitioner, C. G. Harwell, amounts to abandonment of his family, and they constantly suffer from exposure and are public charges. . . Due to the condition in which this family lives, as above outlined, several of them being young women and adolescent youths, and due to the conduct of C. G. Harwell in the home in constantly, before them, exposing his naked person in their presence, the surroundings in which this child was placed were obscene, indecent, and tended to degrade her moral character and toward a vicious life. . . The cruelty of petitioner, C. G. Harwell, has consisted at times in violent abuse of this minor child, cruel threats of violent punishment and death, and violent treatment of the child's mother in her presence, resulting in one instance in a miscarriage which this child had to witness, and the effects of which she had to remove. . . The defendants own a nice comfortable farm in Jefferson County, Georgia, on which they earn sufficient for their own support, and the support of their family and this child. They have a comfortable home with plenty of room for her, easily accessible to a good school in which this child has been placed, and in which she is doing well. Their sole motive in wanting the child is to care for her in her need, the child's mother being a sister of the defendant, Mrs. Tessie Gay." Another amendment set forth an affidavit of both defendants, which, omitting formal parts, was as follows: "Personally appeared before the undersigned attesting officer Mrs. Tessie Gay and Ben G. Gay, who upon oath being duly sworn, depose and say that they are the defendants in the above-stated case, and that facts stated in the original answer as well as in their amendment are true."

The petitioners demurred to the answer, as follows: "Plaintiffs demur generally to said response, on the following grounds: 1. That said response sets out no defense in law to plaintiffs' action; and that said response is insufficient in law. 2. That said response is insufficient in law, because the same is not verified by the affidavit of the respondents. 3. That the same is insufficient in law, for the reason that the same does not produce, or offer to produce, the body of Verna Harwell, the minor child called for in the writ. 4. Plaintiffs demur specially to said answer, for the reason that the same fails to show any kind of valid agreement between the plaintiffs and the respondents by contract or otherwise, authorizing then to refuse to deliver the minor child to her parents. 5. Plaintiffs demur specially to that part of the response as follows: 'and while the said Mrs. C. G. Harwell was at the defendants' home she gave the said Verna Harwell to the defendants with knowledge and approval of C. G. Harwell,' on the ground that the same is a conclusion of the pleader, with no facts set out on which to base said conclusion. 6. Plaintiff demurs specially to the following portion of said answer: 'The defendants say further that the moral conduct of Mr. C. G. Harwell is not sufficient to raise the said Verna Harwell up in,' on the ground that the same is a conclusion of the pleader, with no facts set out on which to base the same; and on the further ground that the same fails to set out how, when or in what way the said C. G. Harwell has acted immorally, and fails to set out what act or acts the said C. G. Harwell has committed that would make him unfit as a father to raise his daughter, Verna Harwell. 7. Plaintiffs demur specially to the following portions of said answer: 'The defendants further say that they themselves are well fixed financially and are able to give the said Verna Harwell the advantages of life,' on the ground that the same is a conclusion of the pleader with no facts set out on which to base the same; and on the further ground that the same fails to set out what property the respondents own and where the same is located, and what debts he has, and what property he owns free and unincumbered, so that the court may know and pass on the question of the financial standing of the respondents, rather than the respondents themselves. 8. Respondents demur specially to said answer as a whole, on the ground that the same fails to set out a legal and binding gift of the minor child to the respondents; and

on the further ground that the answer shows on its face that if the alleged gift was made, it was made without the consent of the father and was without consideration, and therefore void." No brief of evidence was specified as part of the record or set forth in the bill of exceptions.

1. Where the writ of habeas corpus issued on application of a father for custody of his minor child (Code §§ 50-101, 50-121), requiring the detaining person to bring the child before the judge for the purpose of examination into the cause of detention (Code, § 50-104), the return or answer of the respondent should be under .oath, and the child should be produced before the judge. § 50-111. If the return deny any of the material facts alleged in the petition, or allege others upon which issue is taken, the judge shall summarily hear evidence (§ 50-114), and on all the facts may exercise his discretion as to whom the custody of the child shall be given, and shall have power to give such custody of the child to a third person. § 50-121.

2. The return to the writ of habeas corpus may be amended at any time before the final disposition of the cause. Code, § 81-1301: *Wright* v. *Davis,* 120 *Ga.* 670 (48 S. E. 170).

3. Until majority it is the duty of the father to provide for the maintenance, protection, and education of his child (Code, § 74-105; *Stark* v. *Hamilton,* 149 *Ga.* 227, 230, 99 S. E. 861, 5 A. L. R. 1041), and during minority the child shall remain under the control of the father (§ 74-108), who as against third persons is primarily entitled to custody of the child. *Sloan* v. *Jones,* 130 *Ga.* 836 (2) (62 S. E. 21). During such time the wife can not give or contract away the child to a third person without the father's consent. See *Landrum* v. *Landrum,* 159 *Ga.* 324 (2) (125 S. E. 832, 38 A. L. R. 217), and cit.

(*a*) The issue involved not being between the parents, the act of 1913 (Ga. L. 1913, p. 110, Code, § 74-107) is not to be applied as denying the father's prima facie right to custody of the child.

(*b*) Construing the answer as amended most strongly against the respondents, it fails to allege that the father made a gift of the child or ratified such a gift by the mother.

(*c*) In the circumstances mentioned in the return, the allegations as to gift of the child by the mother were insufficient, be-.cause they failed to show an individual right in the .mother, or power from the father, to give.

4. The parental power of a father shall be lost, among other causes, by failure to provide necessaries for his child, or by cruel treatment (Code, § 74-108 (3), (6). Where such parental power over his child has been lost by the father, the judge, on habeas corpus proceedings instituted by the father and mother, may in his discretion, under § 50-121 supra, award custody of the child to a third person. This comports with the ruling in *Sloan* v. *Jones,* supra, where it was held: "While the judge, upon a hearing of a writ of habeas corpus for the detention of a child, is vested with a discretion in determining to whom its custody shall be given, such discretion should be governed by the rules of law, and be exercised in favor of the party having the legal right, unless the evidence shows that the interest and welfare of the child justify the judge in awarding its custody to another."

5. The grounds of special demurrer to the return were met by appropriate amendments in so far as they related to verifying the return and to failure of respondents to produce the body of the child in court. The other grounds of special demurrer to the answer as amended are without merit.

6. On the basis of loss of parental power by the father and want of individual right of the mother to give away the child, the return as amended alleged sufficient ground to avoid dismissal of the answer on general demurrer.

7. While error was assigned on the judgment awarding custody of the child to the respondents, on the ground that it was not authorized by the evidence, no brief of evidence was brought to this court, and that assignment of error was not insisted on in the briefs of the attorney for the plaintiffs in error.

*Judgment affirmed. All the Justices concur.*