MORRIS v. GRANT et al.

No. 14651. OCTOBER 8, 1943.

Hester & Clark, for plaintiff. Thomas H. Gignilliat and William Hugh Stephens, for defendants.

ATKINSON, Justice. Where there is a contest between a parent and a third party over the custody of a minor child, the first question to be determined is whether or not parental control has been lost by the parent. This control may be alienated by any of the six grounds provided under the Code, § 74-108. It may be lost if the parent be guilty of cruel treatment of the child, under the proceedings provided in § 74-109. It may be lost as to a child under twelve years of age, if the child become destitute or is being reared under immoral influences, as provided in § 74-110. Unless the right of custody has been parted with under one of the foregoing provisions, then the child should be awarded to the parent. While the Code § 50-121, states that the court may exercise his discretion as to whom the custody shall be given, still this section can apply only where the parent has lost control by one of the methods stated above. Bond v. Norwood, 195 Ga. 383 (24 S. E. 2d, 289) ; Miller v. Wallace, 76 Ga. 479 (2 Am. St. R. 48) ; Carter v. Brett, 116 Ga. 114 (42 S. E. 348) ; Sloan v. Jones, 130 Ga. 836 (62 S. E. 21) ; Harwell v. Gay, 186 Ga. 80 (196 S. E. 758) ; Butler v. Ross, 188 Ga. 329 (4 S. E. 2d, 21).

There was an issue of fact as to whether the father had relinquished parental control of the children to their aunt, Anna Ruth Grant, after the death of their mother. The following appeared in evidence: Anna Ruth Grant then left Greenville, South Carolina, and with the plaintiff's consent took the children to Savannah, Georgia, where all of them made their home with the other respondent, Horton Grant. After the death of the grandmother,

Anna Ruth Grant went to Greenville, South Carolina, and had a conversation with the plaintiff in reference to the children, about which she testified: "At that time he wanted the children, but I did not see fit for him to have them then. He had nothing to provide for them with. . . I told him if he ever made a home better and could give them more than I, and could support them better than I could, I would give them up, but until then I would keep the children. . . He asked if I would take care of the children if I ever decided to get married, and I said yes. . . I made that agreement because I did not think he could provide for them a home like I am doing, and I promised my mother I would take care of them. . . So we reached an agreement at that time. My understanding of the agreement is that if he ever made a better home, or could support the children better than I could, I would give them up."

In reference to the foregoing conversation, Miss Jane D. Grant, sister of respondents, testified: "The main point brought out was, first, the fact that the children were at that time being properly taken care of. . . Another thing was brought up, that Ruth, my sister, was very young to be taking care of two children, . . and it was agreed upon that she had proved . . she had done a much better job than many people married and older than she was. The fact was also brought up that she might marry, . . but she stated, regardless of what she ever did, she would take care of the children. Another thing brought up was, . . what would be done, provided the father became able to take care of the children better than she could. She said that was the only time she would be willing to give up the children. Otherwise she would take care of them as before. I think those are the main things discussed. . . [Plaintiff] agreed to that." While the father denied this, it presented an issue of fact for the judge to determine. While the law provides that the terms of a contract to deprive a father of his control must be clear, definite, and unambiguous (*Looney* v. *Martin*, 123 *Ga*. 209, 51 S. E. 304; *Wilkinson* v. *Lee*, 138 *Ga*. 360, 75 S. E. 477, 42 L. R. A. (N. S.) 1013; *Richards* v. *McHan*, 129 *Ga*. 275, 58 S. E. 839; *Sloan* v. *Jones*, 130 *Ga*. 836, 849, 62 S. E. 21), yet we cannot say that the judge, who heard the testimony relating to the conduct of the father since the death of the mother, and who heard the evidence in reference to the conversation and

694

voluntary agreement between the father and Anna Ruth Grant at Greenville,. South Carolina, erred in holding that the father had relinquished parental control of the children.

We are not unmindful that the law seeks to work in harmony with nature, and to continue those ties which bind man to his own flesh; and in approaching a solution to this case solemn consideration to this natural law has been borne in mind. But we are bound by the rules of law; and we hold that the judge was authorized by the evidence to award the custody of the children to the respondents until the father is in a position to furnish a better home for the children than they have with the respondents.

*Judgment affirmed. All the Justices concur.*