BEAVERS, guardian, *v.* WILLIAMS *et al.*

114

No. 15079.   FEBRUARY 9, 1945.   ADHERED TO ON REHEARING MARCH 7, 1945.

118

*C. C. Pittman* and *W. B. Robinson,* for plaintiff.

*R. Carter Pittman,* and *Stafford R. Brooke,* for defendants.

DUCKWORTH, Justice. (After stating the foregoing facts.) ■ On the former appearance of this case before this court, in which the plaintiff in error complained of the judgment of the trial court overruling, on July 31, 1943, the demurrers to the respondent's answer as amended, the writ of error was dismissed as prematurely brought, it not appearing that any final judgment had been rendered, and no permission was given to treat the official copy of the bill of exceptions as exceptions pendente lite. *Beavers* v. *Williams,* 197 *Ga.* 9 (supra). The present bill of exceptions recites that, as shown by the record, the case did not terminate until October 20, 1944, and the bill of exceptions was tendered and signed by the judge on November 4, 1944, more than fifteen months after the ruling complained of. There being no exception pendente lite, the direct assignment of error on the interlocutory ruling, being made only in a bill of exceptions sued out more than thirty days after the adjournment of the term at which such ruling was made, comes too late and can not be considered. *Heery* v. *Burkhalter,* 113 *Ga.* 1043 (39 S. E. 406); *Norman* v. *Great Western Tailoring Co.,* 121 *Ga.* 813 (49 S. E. 782); *Brandon* v. *Akers,* 134 *Ga.* 78 (4) (67 S. E. 540); *Birmingham Finance Co.* v. *Chisholm,* 162 *Ga.* 501 (134 S. E. 301); *Callan Court Co.* v. *Citizens &c. National Bank,* 184 *Ga.* 87 (190 S. E. 831).

■ The petitioner, appointed by the court of ordinary of Murray County as guardian of the minor here involved, filed in the superior court of Whitfield County a petition for habeas corpus, seeking custody of the child who she alleged was illegally detained by the respondents. She asserts her right to such custody only by virtue of her appointment as guardian. The respondents filed a return to the writ and set up a gift of the child by its father to Mrs. Victoria Williams, its maternal grandmother and one of the respondents. By an amendment, addressed to the superior court of Whitfield County, Mrs. Williams filed what she contends was a direct attack upon the judgment of the court of ordinary of Murray County, seeking to set aside that judgment on the ground, among others, that Mrs. Beavers, the appointed guardian, perpetrated a fraud upon the court by falsely representing the domicile of the child to be in Murray County, whereas in fact and in law it was in Whitfield County, the domicile of the grandmother, to whom the custody of the child had been permanently given by the father. The court ruled that the answer as amended was sufficient in law to constitute a direct attack upon such judgment, and overruled general and special demurrers filed by the petitioner; thus establishing as the law of the case that, if such allegations be proved, the appointment of Mrs. Beavers as guardian was invalid and should be set aside. After hearing evidence, the court entered judgment finding that the custody of the child had been permanently released to its grandmother, Mrs. Williams, set aside the judgment of the court of ordinary, and remanded the custody of the child to Mrs. Williams. We have for consideration here only the assignment of error upon such judgment of the superior court of Whitfield County.

If the petitioner, Mrs. Beavers, was legally appointed guardian of the person of the child, she would be entitled to its custody. "The power of the guardian over the person of his ward shall be the same as that of the father over his child, the guardian standing in his place." Code, § 49-201. If, however, the child had been given to the grandmother by its father before the appointment of Mrs. Beavers as guardian, it acquired the legal domicile of the grandmother, which was in Whitfield County, and in such a case the court of ordinary of Murray County was without jurisdiction to

appoint a guardian for the child, such power being vested only in the court of ordinary of Whitfield County. § 49-105. But the judgment of the court of ordinary of Murray County, a court of competent and general jurisdiction, is conclusive and binding until reversed or set aside by a direct attack thereon, and the law of the case here is that such an attack has been made. While under the law of the case it remains only necessary to determine whether or not sufficient facts have been presented to authorize the setting aside of the judgment of the court of ordinary, we think that it may be of interest to make the following observations as to the law touching the question of setting aside in a court of equity the judgment of a court of ordinary. In numerous decisions of this court, it has been ruled that a court of equity has the power to set aside such a judgment which has been obtained by actual fraud. See, among others, *Abercrombie* v. *Hair,* 185 *Ga.* 728, 732 (196 S. E. 447) ; *Bowers* v. *Dolen,* 187 *Ga.* 653 (1 S. E. 2d, 734) ; *Rivers* v. *Alsup,* 188 *Ga.* 75, 77 (2) (2 S. E. 2d, 632). In those cases the equity court and the court of ordinary were in the same county, but in *Lester* v. *Reynolds,* 144 *Ga.* 143 (2, 2 a) (86 S. E. 321), *Jordan* v. *Harber,* 172 *Ga.* 139 (157 S. E. 652), and *Johnson* v. *Peoples Bank,* 173 *Ga.* 250 (160 S. E. 235), it was held that, where the superior court of one county has jurisdiction of the person who has obtained by actual fraud a judgment in another county, it may in its equitable jurisdiction set aside such invalid judgment.

The validity of the judgment of the court of ordinary must be measured by the answer to the question as to the domicile of the child, a question raised by the answer as amended of the respondent grandmother, which converted the original proceeding into an equitable cause inter partes. *Jenkins* v. *Flournoy,* 157 *Ga.* 618 (122 S. E. 309). The grandmother might have gone into the court of ordinary of Murray County to set aside the judgment therein rendered, and have filed in the superior court of Whitfield County a petition to enjoin the habeas-corpus proceeding, pending the outcome of the action in Murray County, but she was not obliged to do so, since a court with equitable powers has concurrent jurisdiction with a court of ordinary (Code, § 37-701) ; and it is well settled that, as between the two, the first taking jurisdiction will retain it (Code, § 37-122), and will give full and complete justice to the parties (Code, § 37-901; *Powell* v. *McKinney,* 151

*Ga.* 803, 811 (4), 108 S. E. 23; *Roach* v. *Terry,* 164 *Ga.* 421 (1 b), 138 S. E. 902; *Kidd* v. *Finch,* 188 *Ga.* 492, 496, 4 S. E. 2d, 187), and thus avoid a multiplicity of suits. Even in a case where the defendant may not have had a right in the first instance to resort to a court of equity for relief, yet where the plaintiff goes into a court having equitable powers and brings the defendant into that court, the defendant may set up in an answer by way of cross-action any defense, legal or equitable, and may obtain affirmative relief. *Reaves* v. *Meredith,* 120 *Ga.* 727 (2) (48 S. E. 199).

In the reports of decisions of this court, there may be found many statements that a judge hearing the return to a writ of habeas corpus is sitting as a habeas-corpus court, and one may be led to ask: If the judge is so sitting in a court which has no terms, how can an amendment, addressed to the superior court, be allowed in a habeas-corpus proceeding and thus draw the proceeding from a special court into the superior court, which may not even be in session? In *Barranger* v. *Baum,* 103 *Ga.* 465 (30 S. E. 524, 68 Am. St. R. 113), it was insisted on behalf of the defendant in error that, when the judge of a city court was hearing the return to a writ of habeas corpus, he was not sitting as a judge of the city court but of a habeas-corpus court; and that, therefore, a writ of error would not lie from his decision, but that the only channel through which it could pass for review by this court would be first by certiorari to the superior court. This court held that, "A writ of error will lie direct to this court from the decision of the judge of the city court of Richmond County in a habeas-corpus case." In the opinion it was said that the fact that all the machinery of the court in which the judge was sitting in a habeas-corpus proceeding is not called into requisition at a regular term for the purpose of such hearing, is not inconsistent with the idea that such a proceeding is one in the city court, and it was further said: "The law recognizes no such courts eo nomine as habeas-corpus courts. It is true, in the case of *Moore* v. *Roberson,* 63 *Ga.* 506-8, Justice Bleckley alluded to the ordinary on trying such cases as holding a special habeas-corpus court. The reason assigned for this was, that jurisdiction in such matters was not conferred by statute upon the court of ordinary, but upon the ordinary; and hence the constitution of 1877, by restricting the jurisdiction of courts of ordinary in some respects to county matters, did not affect the statutory

power of the ordinary, previously granted, to preside on the return of writs of habeas corpus. In *Southern Express Co.* v. *Lynch,* 65 *Ga.* 245, Justice Jackson states that, when the judge of the superior court is trying a case upon a writ of habeas corpus, he sits as a habeas-corpus court and not as the superior court. This was merely obiter, and not necessary to the decision rendered in that case, which was simply that the proper remedy for one who was illegally imprisoned with or without form of law is by habeas corpus. But we do not consider this dictum of the court necessarily in conflict with the view herein entertained. We think, however, a more accurate legal view to take of the matter is, that, when a judge of a superior or city court is sitting on the trial of a habeas corpus, he is presiding in a cause pending in the court of which he is judge, and his judgment is a decision of that court, the court recognized by the constitution and established by the laws of the State. The fact that the trial does no occur in regular term does not affect the question. In the case of *Moore* v. *Ferrell,* 1 *Ga.* 6, a motion was made to dismiss the writ of error, on the ground that the order of the judge below was made at chambers, and that the Supreme Court possessed no jurisdiction over the decisions of the judges of the superior courts made in vacation. Judge Lumpkin, who delivered the opinion in that case, said 'that the session of the court below, although intermediate the regular terms, was nevertheless a term quoad [in so far as] the judgment or decree complained of.' " In *Hendley* v. *Adams,* 129 *Ga.* 518 (59 S. E. 227), a writ of habeas corpus was sued out before the ordinary and his decision was carried to the superior court by certiorari. It was held by this court that a writ of error was properly returnable to the Supreme Court, and that the jurisdiction to pass on such a case was in this court and not in the Court of Appeals. Under the amendment to the constitution ratified in 1906, declaring that ".The Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors in law and equity from the superior courts in all civil cases, whether legal or equitable, originating therein, or carried thereto from the court of ordinary," etc., it was necessary to determine that the case certioraried to the superior court was a civil case from the court of ordinary within the meaning of the constitution. This court so held, and in the opinion, in referring

to the numerous references to "habeas-corpus courts" in former decisions, it was said: "Without discussing the cases in which language of this character has been used, or the correctness of the decisions made in them, in view of the questions actually involved, it may be suggested that the law of this State has created no court known as 'a habeas-corpus court.' It has conferred upon the judges of certain courts power to issue the writ and hear the case, but it has erected no distinct tribunal or set of tribunals for that purpose. If the ordinary, who is the judge of the court of ordinary, when hearing a habeas-corpus case, is not to be treated as acting as the ordinary, it would seem that the same rule would apply to a judge of the superior court under like circumstances. If the judgment of the latter in a proceeding of this character is not the judgment of a judge of the superior court, but of some special kind of tribunal, how is his judgment to be reviewed by this court at all?" The opinion then refers to the case of *Moore* v. *Ferrell,* supra, and also to *Barranger* v. *Baum,* supra, saying that the point was practically determined in the last named case, and that, "In order to hold that a writ of error would lie from a decision of the judge of a city court to this court in a habeas-corpus case, it was necessary to hold that the decision of the presiding judge in such a case was the action of the city court within the meaning of that provision of the constitution [stating the jurisdiction of this court]."

It thus appears that, whether or not the hearing be at a *regular* term, it is, in so far as such proceeding is concerned, a hearing in term. In the present case it is recited in the bill of exceptions that the case came on to be heard "in the superior court of said county," and "the same being at the regular July term, 1944, of said court." In a habeas-corpus proceeding the judge passes upon all questions of law and fact without a jury, in a summary way, to fix the status of the person detained, and the beneficent purposes of the writ ought not to be dissipated by subtle objections and technical niceties or lessened by legal refinements. *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305, 312 (43 S. E. 780, 61 L. R. A. 739). See also Code, §§ 50-114, 50-121, 50-119; *Starr* v. *Barton,* 34 *Ga.* 99; *Sumner* v. *Sumner,* 117 *Ga.* 229 (4) (43 S. E. 485); *Harwell* v. *Gay,* 186 *Ga.* 80, 84 (1) (196 S. E. 758). There is here no complaint that, though equitable characteristics were given to the proceeding,

the hearing was not held at a proper time, or that the judge should not have formulated his judgment without a jury passing on the facts, all objections going to other matters. Since no contention is made that the hearing was in any wise premature, and the petitioner entered upon the trial of the issues without any objection, her consent to a trial at the time it was had must be implied. It follows that, even if the court should have deferred action until a second term by reason of the proceeding having been converted into an equitable cause, a theory which we do not admit to be tenable in view of the nature of a habeas-corpus investigation, any complaint that the hearing was premature would be without merit. *Wilson* v. *Trustees of Union &c. Seminary,* 181 *Ga.* 755, 756 (1) (184 S. E. 290). Furthermore, even if it could be said that, by reason of the equitable feature injected into the case, the rule as to a summary hearing by the judge alone must yield to the principle that in equity cases the jury should pass on the facts touching the question of setting aside the judgment of the court of ordinary, the judge properly passed on the facts without the aid of a jury, for the reason that, as hereinafter shown, there was no conflict in the evidence on the question of fraud in the procurement of the judgment sought to be set aside.

Was there evidence sufficient to establish the right of the grandmother, Mrs. Victoria Williams, to the custody of the child? The domicile of the child in the lifetime of its father was that of the father in Murray County, Georgia, unless he had voluntarily relinquished his parental authority to some other person, in which event the domicile of the minor became that of the one to whom parental authority had been relinquished. Code, § 79-404. "Where a father relinquishes the custody and control of his minor child to another, the latter, if a suitable and proper person to have such custody and control, is legally entitled thereto." *Carter* v. *Brett,* 116 *Ga.* 114 (42 S. E. 348) ; *Saxon* v. *Brantley,* 174 *Ga.* 641 (163 S. E. 504) ; *Bailey* v. *Warlick,* 196 *Ga.* 642, 647 (2) (27 S. E. 2d, 322). Such a relinquishment is irrevocable except for good cause shown. *Bently* v. *Terry,* 59 *Ga.* 555 (3) (27 Am. R. 399) ; *Lamar* v. *Harris,* 117 *Ga.* 993, 999 (44 S. E. 866) ; *Durden* v. *Johnson,* 194 *Ga.* 689 (2) (22 S. E. 2d, 514). The evidence to show a relinquishment must be clear and certain. *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48) ; *Broxton* v. *Fairfax,* 149 *Ga.*

122 (2) (99 S. E. 292) ; *Butler* v. *Ross,* 188 *Ga.* 329, 330 (4 S. E. 2d, 21) ; *Morris* v. *Grant,* 196 *Ga.* 692, 693 (27 S. E. 2d, 295). In the present case it is stipulated between the parties that both the petitioner, Mrs. Beavers, and the respondent, Mrs. Victoria Williams, are fit and suitable persons to have the custody of the child. We think that, under the above authorities, the court was authorized to find that the custody of the child had by contract been relinquished by the father to its grandmother, Mrs. Williams, and that she fully complied with her agreement to take care of the child and properly rear it. Although there was evidence to the effect that before his last illness the father had declared to others that the arrangement for the keeping of the child by the grandmother was only temporary and he intended to bring it to his own home when he completed a house he was then erecting, or might remove with the child to Elberton, Georgia, and live with a sister and conduct with her a grocery business and thus support the child and have the benefit of the ministrations of the sister towards the child, none of these statements were shown to have been made in the presence of Mrs. Williams; and the uncontradicted evidence was that the father, in his last illness in a hospital, told Mrs Williams, after she had had the child for about eighteen months, "You take care of my boy, which I know you will do," and further said, "The child is right where I want him." Certainly, no matter what his intentions might have been theretofore, these death-bed utterances were sufficient to show clearly and definitely a complete relinquishment of custody to the grandmother with the understanding that she would care for and rear him. In *Portman* v. *Mobley,* 158 *Ga.* 269, 271 (123 S. E. 695), similar language was held by this court to authorize a finding that the father of a minor had placed the child in the custody of a brother domiciled in a county other than that in which the grandfather on the maternal side had obtained an order of adoption of the child. In that case there was testimony by an uncle of the child, and by others to the same effect, that, while the child was living with the paternal grandfather in Troup County, "My brother told me before he died that he wanted his father, W. R. Mobley [the paternal grandfather of the child], to take and rear Lois."

In response to a question by the judge as to whether she ever told anybody that she was taking care of the child only until the

father could make other arrangements, Mrs. Williams answered "No, sir. Of course, I know, Burl didn't give him to me *when he was alive,* but he wanted me to live with him. He told me time after time he wanted me to live with them." (Italics ours.) It is strongly urged by counsel for the plaintiff in error that the above italicized words show conclusively that Mrs. Williams's custody was only temporary. Evidently the court did not so construe the language, and the meaning contended for is not required. Words are only vehicles of thought and are sometimes in their context inexact, and those here employed must be interpreted in the light of all the facts and circumstances of the case. Mrs. Williams had testified that the original idea of the father was that she come and live with him and take care of the child in the home of the father, but that she, for satisfactory reasons, was unwilling to enter into that arrangement, and that subsequently and before his last illness the father placed the child in her own home. She did not contend that the first placement was of a permanent nature; but she did contend that in his death-bed illness the father permanently relinquished the custody of the child to her. In her first statement to the court as above quoted, she affirmatively denied that when she originally took the child she told anybody that she was doing it only until the father could make other arrangements, but she then admitted that she knew he "didn't give him to me when Burl [the father] was alive" but wanted her to live with him. The loose expression, "when Burl was alive," could not, when all of her testimony is considered, be distorted to mean that the father never in his lifetime gave the child to her, but refers rather to the *period* antedating his death-bed declaration, as it is followed by the words, "but he wanted me to live with him," a wish expressed before his last illness and not at the hospital, when, abandoning any original plan of having the child and Mrs. Williams in a home with him, he made a permanent arrangement with Mrs. Williams for retaining the child in her home where the child already was, stating to her, "You take care of my boy, which I know you will do," and, "The child is right where I want him." Certainly in view of all the facts and circumstances, where no contention was made by Mrs. Williams that she acquired custody of the child only after the death of the father, the expression, "when Burl was alive," was reasonably susceptible

of the construction evidently placed thereon by the judge, that it related to the period antedating the father's death-bed illness, the grandmother distinguishing between the time when he was not incapacitated and when he was on his death bed.

Since the court was authorized to find in favor of Mrs. Williams's contentions, it necessarily follows that she stood in loco parentis to the child, and that his domicile was that of the grandmother, and no court would be authorized to appoint a guardian for the child in the absence of a showing of a change in condition rendering Mrs. Williams's custody of the child inimical to its welfare. In no case, while the child was domiciled in Whitfield County, could a court of ordinary of another county legally appoint a guardian for it. Code, § 49-105. Yet, while the judgment of the court of ordinary of Murray County might be set aside in that court merely by showing a lack of jurisdiction, to set it aside in a court of equity in another county, it is necessary, under the authorities hereinbefore cited, that actual fraud be shown in the procurement of the judgment. The question, therefore, arises: Was the trial judge, acting in an equity court in Whitfield County, authorized to find the guardian, Mrs. Beavers, applicant for the writ of habeas corpus, guilty of perpetrating an actual fraud upon the court of ordinary in Murray County? She admitted that she represented in the guardianship proceeding that the child was domiciled in Murray County, and that she knew that the child was at that time residing with its grandmother in Whitfield County. She seeks to justify her declaration by stating that she thought the child was domiciled in Murray County because she knew its father had lived and died therein. This was not an instance of representing something, qualified by a statement that the declaration as to domicile was made on information and belief, but the representation amounted to a pretension of knowledge of a fact which, upon application of the law, was untrue, but which she, without disclosing other information to the court, intended to be relied upon as true in the consideration of her application for appointment as guardian. Whether or not she overtly intended to deceive the court, the effect of the unqualified statement was to cause the court to act upon a misapprehension of its jurisdiction just as readily as if the statement had been made while conscious of its falsity. One not knowing should not, in a solemn proceeding, pretend to

know, and if he does so act he thereby commits upon the court an actual fraud which is remediable in equity. In the course of a carefully prepared opinion in an early case, *Smith* v. *Mitchell,* 6 *Ga.* 458, Judge Nisbet, speaking for the court, said, "If the fact is neither known to be true or false, the affirmation of its truth is, in morals a falsehood, and in law a fraud. The turpitude in the latter case, by a nice balancing in the moral scales, may be considered as being a fraction less intense, and that is all the difference. The consequence to the injured party is the same in both cases, and the consequences to the healthfulness of contracts throughout the entire business world, if such delinquency was tolerated, would be, also, in both cases the same. In both cases there is an actual fraud, a moral fraud necessarily deducible from the affirmation of a fact which is false, and upon which another is induced to act to his injury. In all such cases the intervention of a court of chancery may be put upon the ground of fraud." The provisions of our Code are in accordance with this ruling. Section 37-702 provides: "Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived." Section 96-202, which was doubtless patterned after the statement in *Smith* v. *Mitchell,* supra, provides: "Fraud may exist from misrepresentations by either party, made with design to deceive, or which does actually deceive the other party." It is clear that the gravamen of the offense is the deceit which is practiced. The Code, § 105-302, extends the scope of the guilt to reckless representations, since it is there provided that, "A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." One of the definitions of "deceive" by Webster is: "To lead into error; to cause to believe what is false or disbelieve what is true; to impose upon." It can not be denied that Mrs. Beavers intended that the court of ordinary rely upon her statement of a fact which was false. In doing so, she misled and caused the court to do what it would not have done if it had known that the domicile of the child was not in Murray County. She seeks to justify her conduct upon an erroneous conclusion of law as to the domicile, and, while her belief might have been quite sincere, her conduct was nevertheless such recklessness as the law terms the equivalent of knowingly making a false statement. A fair and proper statement to

the court would have been that she really did not know the domicile, though she apprehended that upon legal principles it was in Murray County, in which event the court would have paused and have made further investigation. Such an investigation would have doubtless disclosed the claim of the grandmother, who was unaware of the proceeding, and not barred from subsequently attacking the proceeding merely because citation by publication in Murray County, not brought to her notice in Whitfield County, had been made. *Davis* v. *Albritton,* 127 *Ga.* 517, 520 (56 S. E. 514, 8 L. R. A. (N. S.) 820, 119 Am. St. R. 352); *Bowers* v. *Dolen,* 187 *Ga.* 653 (3) (supra).

It follows from the above that the court did not err in finding that the custody of the child had been permanently relinquished to the grandmother, Mrs. Victoria Williams, and in setting aside the judgment of the court of ordinary of Murray County, and in remanding the custody of the child to Mrs. Williams.

*Judgment affirmed. All the Justices concur, except Wyatt, J., absent because of illness.*