19398.   WHEELER *et al. v.* HOWARD *et al.*

ARGUED JUNE 13, 1956—DECIDED JULY 10, 1956—
REHEARING DENIED JULY 24, 1956.

554

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Noah J. Stone, Carl A. Herbig,* for plaintiff in error.

*James A. Mackay, Marvin G. Russell, Turner Paschal,* contra.

MOBLEY, Justice. In a contest between the natural parents of a child and third parties, all of whom are morally fit and proper persons, those having the legal right to the custody of the child will prevail. *Williams* v. *Crosby,* 118 *Ga.* 296 (45 S. E. 282); *Rawdin* v. *Conner,* 210 *Ga.* 508, 510 (81 S. E. 2d 461). This being a contest between such parents and third parties, the natural parents should prevail unless they have lost their parental powers in some way provided by law. It is contended here that the parents abandoned their child within the meaning of Code § 74-108 (3), and by reason thereof have lost the legal right to its custody.

The question is whether evidence—showing that the petitioners consented to the adoption of their child, permitted it to be delivered to the adopting parents at the hospital a few days after birth, and failed to provide necessaries or support or to do anything for the child from its birth on August 28, 1953, until they filed objections to the final order of adoption on May 24, 1954— amounts to abandonment within the meaning of the law. The very theory of adoption and the purpose and plan thereof is that the adopting parents, unless otherwise provided, will take the child, provide for its care, and rear it as if it were their own,

without interference or hindrance by the natural parents. Here, the parents were not permitted to know who had their child or anything about its whereabouts, and apparently this is the general practice and is obviously a wise policy. It was not contemplated that the natural parents would provide necessaries for this child, and their failure to do so would not be evidence of abandonment on their part. Particularly is this true where, as here, the evidence shows that this mother, as soon as she and the father were married, began to write letters to the minister, the superintendent of the hospital, and the doctors, who had consulted with and assisted her in placing the child for adoption, seeking ways to get her child—all to no avail—and where her own lawyer refused to give her the name and address of the adopting parents, he not thinking it advisable to do so, which efforts on her part continued until she finally resorted to filing objections to the final order of adoption, and at the hearing thereon, offered to reimburse the adopting parents for their expenses in supporting the child.

The question finally presented, then, is whether consenting to adoption and turning the child over to adopting parents for them to rear constitutes abandonment. We think not, for if it were otherwise the rule of law that parents may without cause, at any time before final adoption, withdraw their consent—as this court in *Wheeler* v. *Howard*, 211 *Ga.* 596 (87 S. E. 2d 377) held could be done, would be of no force and effect whatsoever. If giving consent amounted to abandonment, withdrawing consent would be a useless gesture, for abandonment is equally as good ground for adoption as is consent.

Furthermore, the facts here are not consistent with an intention to abandon. This unmarried mother, faced with the dilemma of giving birth to a child whose father, by reason of a previous undissolved marriage, was unable to marry her and legitimatize the child, sought counsel of a reputable minister and others to whom he referred her, and agreed for the doctors to place the child for adoption. According to her uncontradicted testimony, she first sought means of arranging to keep her baby, but was advised that she, an unmarried mother, should not do that, and that the proper thing to do was to put it out for adoption, because for her to keep the child would not only cast a stigma

upon her but upon the child as well, and it was under these circumstances that she and the father consented to the child's adoption.

However strong the equities of the adopting parents may be, it is true that they took the child knowing that under the law, Code § 74-401 et seq., they were merely to take and keep the child until an interlocutory hearing to be held not less than 75 days from the filing of the petition, at which hearing the court might award them temporary custody; that, after the expiration of six months from the date of the interlocutory order, the court would hear and determine whether a final order of adoption should be entered; that they might, at any time before the final order of adoption, withdraw their petition and give the child up, and that likewise the natural parents might withdraw their consent, or that objections might be filed to the final order of adoption. The very purpose of this long delay in adoption proceedings is to provide time for determining whether the adoption is in the best interest of the child, and the events which happen during the pendency of the proceedings are to be considered by the court in the final determination of the matter. This court in *Wheeler* v. *Howard*, supra, recognized the importance that the legitimatizing of the child during the pendency of the proceedings would have upon the issue, when it said (p. 598): "While we cannot consider matters not embraced in the question in reaching our conclusions, we do point to what this record show[s] as abundant proof of the wisdom of our decision that the consent may be arbitrarily withdrawn at any time before final judgment. It shows the infant to have been an illegitimate, but that, since the consent was signed, the parents have married, thus legitimatizing the child as provided in Code § 74-101."

There being no abandonment, the natural parents have not lost parental control, and have the legal right to the child; and there being no evidence that they are not morally fit and suitable persons to have custody of the child, the trial court erred in denying their petition for the writ of habeas corpus and in granting custody to the respondents.

*Judgment reversed. All the Justices concur, except Candler, J., who dissents.*

CANDLER, Justice, dissenting. In *Wheeler v. Howard*, 211 *Ga.*
596, it was held that parents who had freely and voluntarily
consented in writing to the adoption of their minor child could,
without showing any cause, withdraw such consent at any time
before the final judgment of adoption. I agreed to the ruling
there made and do not now recede from that position; but the
issue in this habeas corpus proceeding should not be confused
with the one involved in that adoption proceeding. There are
six ways in which parental control of a minor child may be lost
or forfeited (Code § 74-108), among which are abandonment
and voluntary contract, releasing the right to a third person. In
this case, if the trial judge was authorized to find from the evi-
dence that the parents of the child here involved had lost or
forfeited their right of parental custody by either one or both of
the ways mentioned above, then his judgment awarding posses-
sion of the child to the respondents ought not to be reversed by
this court, and this is especially true since no attack was made
on the character and fitness of the respondents or their ability
to properly care for and rear the child. I will not undertake to
make any extensive statement of the evidence which the parties
introduced; but briefly, and without dispute, it shows: The child
is the illegitimate offspring of a married man and a single woman,
both school teachers. After conception, they came from their
homes in Texas to Atlanta for the prospective mother's delivery
and to conceal the fact of her pregnancy. There they lived
together at a stated place until the child was born. Before its
birth, they appealed to a number of highly respected people of
Atlanta, including a prominent minister, to assist them in their
dilemma. They told those to whom they appealed that they
wanted to get rid of the baby as soon as it was born and to that
end desired their help. Through pure Christian kindness those
parties, at the request and with the unqualified consent of the
prospective parents, arranged with the respondents to take the
baby at its birth and at their expense to rear it as their own.
In a few days after the baby's birth, the respondents, pursuant
to their agreement, took custody of it, the parents returned to
their homes in Texas and since August, 1953, the respondents
have fully complied with the terms of the contract releasing the
baby to them. In these circumstances, it seems very clear to
me that the trial judge was certainly authorized, if not compelled,

to find that these parents lost or forfeited their right to parental custody. Hence, I respectfully decline to concur in a holding that the trial judge abused his discretion in rendering the judgment complained of. See Code § 50-121; *Harwell* v. *Gay*, 186 *Ga.* 80 (196 S. E. 758); *Morris* v. *Grant*, 196 *Ga.* 692 (27 S. E. 2d 295); *Moody* v. *Pike*, 200 *Ga.* 243 (36 S. E. 2d 752); *Byers* v. *Loftis*, 208 *Ga.* 398 (67 S. E. 2d 118).