John C. Boyd, plaintiff in error vs. Permelia Glass and J. Frank Glass, defendants in error.

[1.] The Probate Court of Chambers county, Alabama, appointed a guardian of the persons of two infants, residing at the time in the State of Georgia: *Held*, That such appointment is void, because the court had no jurisdiction of the infants' persons.

[2.] An executor of a will, as such, is not entitled to the custody of the minor children of his testator.

[3.] When infants are brought before a *habeas corpus* court, the court will exercise its discretion as to their custody; and unless such discretion has been flagrantly abused, a reviewing court will not interfere.

*Habeas Corpus.* Decided by Judge Worrill. At Chambers. November 1862.

Boyd sued out this writ against Permelia Glass and J. Frank Glass, to obtain the custody of two minors, Franklin and Permelia Boyd, children of John Boyd, deceased.

At the hearing it was admitted that John Boyd, the father, of Chambers county, Alabama, married Miss Margaret Glass, of Harris county, Georgia, daughter of Permelia Glass, and took her to his home in Chambers county, Alabama. They lived agreeably together until April, 1851, when he died, having made the will hereafter mentioned, and having by his last wife two children, the minors now in controversy, aged, one about four, and the other about six years. That

after his death his widow remained at his residence in Chambers county, Alabama, until December, 1861, when, on account of some disagreement between her and the family, she took three negroes, some other property, and all her furniture, and came to her mother's house, in Harris county, Georgia, where she permanently resided until she died, about two months ago;—the children being with her all the time from the death of her husband to the time of her own death. The children being then at the house of their grand-mother, Permelia Glass, have remained there, and are now in the custody of her and the other defendant in this case. That Permelia Glass is now about sixty-four years of age, a woman of good sense, a respectable lady, and would be likely to be kind to the children; that she was in possession of enough property to live comfortably, but had but little property—not wealthy. That she had applied to the Ordinary of Harris county for letters of guardianship of the children; that their property in Harris was worth between six and seven thousand dollars; that they also had a large amount in the hands of John C. Boyd, in Chambers county, Alabama, as their guardian and the executor of their father's will; that the entire estate of their father is worth some ninety or one hundred thousand dollars; and that the property given to their mother was, the most of it, now in the hands of John C. Boyd, in Chambers county, Alabama.

Col. Ramsay stated (and his statements were allowed as evidence) that he was well acquainted with Mrs. Glass; that her circumstances were comfortable; that she was a woman of fine sense, and quite intelligent; that no one could raise the children better; that her sons were moral, temperate and intelligent men; that her daughters were modest, chaste, and highly respectable; that though the family were not rich, he did not know one more respectable; that he knew old Mr. Glass in his lifetime, and that he was an excellent citizen; that Mrs. Glass was warmly attached to the children; and that she was a strict Presbyterian, and he knew she would raise the children properly.

The plaintiff introduced Solon Beale, of Chambers county, Alabama, who testified that he was well acquainted with John C. Boyd, the plaintiff, and knew him to be a man worth about $25,000,—about twenty-eight or thirty years of age, a member of the Baptist Church, a kind, agreeable, clever man. Also, that he knew his wife, who was a good tempered woman—had three children, one of them about six years of age; that she was a highly respectable lady, and a member of the Baptist Church. That John Boyd, deceased, left ten children by his first wife, all of them but one living in Chambers and Tallapoosa counties, Alabama, and all married but three; that one of them, about nine years old, lived with John C. Boyd.

The plaintiff introduced the affidavit of two other citizens of Chambers county, Alabama, certified by the Judge of Probate to be credible witnesses, who testified that they were well acquainted with the plaintiff, and regarded him as a discreet man and of sound judgment,—one well qualified to raise these minors, his half brother and sister, and consequently a suitable person to become their guardian.

He also introduced a transcript from the Probate Court of Chambers county, Alabama, showing that he had given bond and security for the guardianship of the persons and property of each of these minors, and that on the 18th of October, 1862, the letters of guardianship were granted to him. Also, a transcript from the same Court giving a copy of the will of John Boyd, the father, by which it appeared that he bequeathed to his wife three slaves for her life, with remainder to these children, and, with some other unimportant legacies, gave the residue to his wife, these two children, and the ten children by a former wife, appointing his wife testamentary guardian of her children, without bond, during her widowhood; also, appointing the plaintiff his executor.

The Court, after hearing argument, ordered the writ dismissed at the plaintiff's cost, and that the children remain with defendants; and the plaintiff excepted.

BETHUNE, for plaintiff in error.

RAMSEY, for defendants.

WALKER, J. .

This writ of *habeas corpus* was sued out by the paternal half brother, to recover possession of two children from the custody of their maternal grand-mother. The petitioner rests his claim, as we understand, on three grounds; first, that he was appointed by the Probate Court of Chambers county, Alabama, guardian of their persons and property; second, that he was appointed, by the father of the children, executor of his will, and as such, on the death of their mother, the testamentary guardian, he would be entitled to the custody of the children; third, that he is one of the next of kin. The court below refused his application, and that decision is brought up for review.

[1.] If a Court have jurisdiction of a question, and acts upon it, that action, until set aside, is conclusive. But the question of jurisdiction is always open to investigation; and if upon such investigation it be found that the court had no jurisdiction of the person, or subject matter, then all proceedings had are nullities. In the leading case of *Towns Gov. vs. Springer*, 9 *Ga. R.*, 130, this Court decides that "a judgment rendered by a Court without jurisdiction, is a mere nullity, and may be so held wherever and whenever and in whatever way it is sought to be used as a valid judgment." In delivering the opinion, the Court says, p. 132, "it" (the judgment then in question) "is a nullity, because the Court which rendered it had no jurisdiction over the sheriff upon a rule founded on an execution returnable to the Inferior Court. If a nullity, it is available, to the party procuring it, for no purpose. The assailability of a judgment of a Court of competent jurisdiction is one thing— of a judgment of a Court not having jurisdiction, for want of jurisdiction, is a very different thing. In the latter case, the judgment may be impeached wherever and whenever it is sought to be used as a valid judgment, no matter in what way it is proposed to be used. To make a judgment *in personam* valid, the Court which renders it must have jurisdiction

of the subject matter, and of the person against whom it is rendered." Again, in *Lessee of Wright vs. Griffith*, 18 *Ga. R.*, 176, the Court says: "A judgment of the Court of Ordinary granting administration, may be impeached by *extraneous evidence* showing *the case* to have been such that the Court had no power to grant the administration." In *Grier vs. McLendon*, 7 *Ga. R.*, 364, a case in its facts very similar to the one at bar, Judge Warner, delivering the opinion of the Court, says: "In order to have given the Court of Ordinary of Troup county jurisdiction to appoint a guardian for Susan McLendon, she must either have been within the limits of the county, at the time of the appointment, or had property within the limits of the county. If she resided in the State of Alabama at the time of the appointment of the guardian for her by the Court of Ordinary of Troup, and had no property situated within the limits of the county, then the Court had no jurisdiction, either to appoint a guardian for her person or her property. Although she may have resided in Alabama at the time of the appointment of the guardian, yet, if she had property in the county of Troup, the Court of Ordinary of that county had jurisdiction to appoint a guardian to manage and control *such property*." I am not aware that this doctrine has been questioned in any subsequent case. The same principle is maintained in *Buckanan vs. Rucker*, 1 *Camb. R.*, 63; 2 *Sm. L. C.*, 449. Vattel, *L. N.*, *Book II*, *ch.* 7, *sec.* 84, says: "It belongs to the domestic Judge to nominate tutors and guardians for minors and idots." See also *Sto. on Conf. of L.*, *sec.* 540, *and note* (2) *to sec.* 497. Our statute, *Cobb's N. D.*, 286, says: "Letters of guardianship shall only be granted by the Court of Ordinary of the county where the minor or ward resided at the time application for letters of guardianship is made, if said minor or ward reside in this State." Code, sec. 1757, contains a similar provision.

In the case at bar the mother of the children was, by their father's will, appointed guardian of these children, and lived with them at the residence of her late husband

33

until about a year preceding the trial, when they removed to Harris county. This made that the county of the minors residence, as decided in *Darden vs. Wyatt*, 15 *Ga.* 414. They resided in Harris county at the time of the death of their mother, some two months before the trial, and continued to reside there up to the time of suing out the *habeas corpus*. The Court of Probate of Chambers county, Alabama, then, on the 18th day of October, 1862, when it granted letters of guardianship of the *persons* of these minors, had no jurisdiction, and consequently, said letters being a nullity, the plaintiff can take nothing thereby.

[2.] No authority was produced, nor do we know of any, which gives to an executor, *as such*, a right to the custody of the minor children of his testator. We think such is not the law.

[3.] Section 3925 of the Code authorizes the Court, on hearing all the facts, to exercise its discretion as to whose custody a child shall be given. This was the law previously.—*In re Mitchell, R. M. Charlton, Rep.* 489. In a case of this sort, "it must be a flagrant abuse of that discretion, which will authorize a reviewing Court to interfere." *Lindsay vs. Lindsay*, 14 *Ga. R.* 657. In this case we find no flagrant abuse of discretion by the Court below; indeed, we rather think, under the facts and circumstances, the decision was right; at any rate, there was no such abuse of discretion as to require the interference of this Court. We are satisfied the children will be well cared for by their grand-mother, and their interests, probably, quite as well protected as if they had been delivered over to the custody of the plaintiff.

Judgment affirmed.