## WALDRUP v. CRANE.

No. 16038. FEBRUARY 12, 1948. REHEARING DENIED MARCH 19, 1948.

*Irwin R. Kimzey, Hamilton Kimzey,* and *Herbert B. Kimzey,* for plaintiff.

*Frankum & Ellard,* for defendant.

CANDLER, Justice. The exception here is to a judgment of the superior court awarding the custody of a minor about four years of age to her maternal grandfather.

In the father's petition for habeas corpus, he alleged: In January, 1944, when the child was born and the mother died, he was serving in the United States Army, but was home on leave at that time. Being unable to provide for his child at that time, he left her with the defendant, but continuously contributed to her welfare and support by a monthly allotment from his Army pay. Upon his return from overseas and discharge from the Army in July, 1947, he demanded the possession of his daughter, but was refused. He is now married, has a home, and is able to provide and care for his minor daughter, and her detention by the defendant is illegal.

The answer of the respondent admitted his custody of the child, but denied that a demand had been made for her or that her detention was illegal. He admitted that the petitioner was the natural father of the child, but averred that the petitioner gave the child to him and his wife, and that the petitioner had denied being the father of the child, and is not a fit and proper person to have her custody.

In contests between a parent and a third party over the custody of a minor child, the first question to be determined is whether or not the parental control of the child has been lost by the parent. By the Code, § 74-108, it is declared: "Until majority, the child shall remain under the control of the father, who is entitled to his services, and the proceeds of his labor." That section also provides that this parental power and control may be lost or alienated by any of the six grounds therein stated. In addition to these grounds, the parental control may be lost under the proceedings provided in the Code, § 74-109, if the parent be guilty of cruel treatment of his child; or it may be lost, under the proceedings provided in § 74-110, where it is made to appear that the child is under 12 years of age and being reared under immoral, obscene, or indecent influences likely to degrade its moral character and devote it to a vicious life. Unless the parental control has been lost under one of the foregoing provisions, the father's prima facie right to the custody and control of his minor child, as against the claim of a third person, is not subject to legal challenge. While the Code, § 50-121, provides that, in all writs of habeas corpus sued out on account of the detention of a child, the court, on hearing all the facts, may exercise a discretion as to whom the custody shall be given and shall have the power to give such custody to a third person, still this section is applicable only where the parental control has been lost by one of the methods set out above. *Bond* v. *Norwood*, 195 *Ga.* 383 (24 S. E. 2d, 289), and cit.; *Morris* v. *Grant*, 196 *Ga.* 692 (27 S. E. 2d, 295); *Watkins* v. *Terrell*, 196 *Ga.* 651 (27 S. E. 2d, 329). And under the provisions of the Code, § 74-107, the judge is vested with a discretion in making an award of custody of a minor child, but that section is applicable only where the contest is between the child's parents, in which case the father has no prima facie right to its custody, and the law directs that the welfare and best interest of the child control the court in awarding custody.

The Code, § 74-108, subsection 1, provides that the parental control may be lost by: "Voluntary contract, releasing the right to a third person." It is strongly urged by the defendant in error that the evidence introduced at the hearing was amply

sufficient to show an absolute gift of the child by the father, an acceptance of the gift by the respondent, and compliance by him with every obligation the law would place upon him by reason of such acceptance. It is not contended that the parental control was lost by any of the other prescribed methods.

It is a well-settled rule that, where it is insisted that the father has relinquished his right to the custody and control of his minor child to a third person by a voluntary contract, a clear and strong case must be made, and the terms of the contract, to have the effect of depriving him of his control, should be clear, definite, and unambiguous. *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48); *Looney* v. *Martin,* 123 *Ga.* 209 (51 S. E. 304); *Beavers* v. *Williams,* 199 *Ga.* 113, 124 (33 S. E. 2d, 343). Looking to the evidence to determine whether such a contract was in fact made between the parties, we have the testimony of the father that at the time of the birth of the child and death of the mother he was in the United States Army, preparing to be sent overseas, and in fact did leave for overseas duty within three weeks; that he had no other means to provide for his child at that time, and made a temporary arrangement with the grandparents whereby they would keep and care for her until his discharge. The respondent testified that, "when the plaintiff came home, he told me that there is the baby, I am giving it to you to take care of and raise it." The wife of the respondent, the child's maternal grandmother, testified: "The plaintiff told me he was leaving the baby with me to raise." If this evidence could be construed as sufficient to constitute a binding contract of relinquishment of parental control of the child, then an issue of fact would necessarily arise, and the judgment of the court would of course not be disturbed. But this evidence, standing alone, is insufficient to establish the clear, definite, and certain contract contemplated by law. In *Broxton* v. *Fairfax,* 149 *Ga.* 122, 124 (99 S. E. 292), which was a case very similar on its facts to the one at bar, this court held that the trial court erred in awarding the custody of a minor child to a third person as against the claim of its father. It was there said: "The applicant herself and the two witnesses introduced by her testified only in the most general language that the defendant 'gave her the child.' This may be merely a

conclusion of the witness. There should be, to have authorized the habeas corpus court to find that there was a gift, some evidence of the terms of the contract by which it was claimed that the father relinquished his authority and parental control over his infant son. There is no evidence to show that he agreed to relinquish that control during the years of the child's minority or for any particular period of time; or that he made any stipulation that anything should be done for the child by way of rearing it properly or educating it."

There is yet another legal obstacle to the respondent's contention, as manifested by the subsequent actions and conduct of the parties. The Code, § 74-105, provides that until majority, it is the duty of the father to provide for the maintenance, protection, and education of his child. However, when this parental duty and control is lost or alienated to a third person by any of the means recognized by law, then such third person stands in loco parentis to the child, and the duty and obligation to provide for its welfare and protection devolves upon such third person. *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269); *Howard* v. *Randolph,* 134 *Ga.* 691 (68 S. E. 586, 29 L. R. A. (N. S.) 294, 20 Ann. Cas. 392). For a voluntary contract of relinquishment of parental control to be valid and binding on the parties, it must be supported by a legal consideration. The consideration for such a contract has been held to be sufficient in those cases where the third person, who claims the right to the child's custody under a voluntary contract with a parent, has assumed all the responsibilities of the child's maintenance, education, and protection. *Bentley* v. *Terry,* 59 *Ga.* 555 (27 Am. St. R. 399); *Eaves* v. *Fears,* supra; *Wilkinson* v. *Lee,* 138 *Ga.* 360, 364, (75 S. E. 477, 42 L. R. A. (N. S.) 1013). The uncontradicted evidence in the present case shows that the father contributed to the child's welfare and support by a voluntary allotment of $42 per month from his Army pay, which amount was paid directly to the respondent. As further evidence that the respondent had not accepted the child by an unconditional gift and thereafter assumed the responsibilities of a parent, he testified as follows: "The money received was about $100 for the first 6 months, which was sent by money orders from plaintiff's mother, and since that time he has continued to

support the child and sent an allotment every month, and the last allotment came on August the 4th or 5th [1947]. He notified us he was out of the Army. I had to make him support the child, and I went to the ordinary and wrote several letters to the Government. He did not tell me that he had the allotment changed on February 9." This testimony is conclusive against the contention of the respondent. It not only shows an utter lack of consideration for the alleged contract of relinquishment of parental control; but inevitably leads us to the definite conclusion that it was not the intention of the parties that there should have been an unconditional gift of the child to the grandfather, but rather that he should keep and care for her only during the temporary absence of the father and until he could provide a home for her himself; and that the grandfather should be remunerated for such service by the monthly allotment from the father's Army pay.

It might appear to be harsh and perhaps unjust, particularly to the maternal grandparents who have nourished, cared for, and loved their granddaughter since her birth, and who are perhaps now as much devoted and attached to her as if she were their own, to be, at this time, deprived of her custody and control. But however tender may be the love for the grandchild, God gave her to the father, and not to the grandfather. The father is legally bound for her welfare and maintenance. The grandfather is not. What he does for her is wholly voluntary. She is primarily the ward of her father, who is prima facie entitled to her custody and control. As was said in *Lamar* v. *Harris,* 117 *Ga.* 993, 997 (44 S. E. 866): "The law does not fly in the face of nature, but rather seeks to act in harmony with it, and to that end encourages the formation and continuance of those ties which by the inscrutable providence of God bind man to his own flesh." We must therefore hold that the evidence was insufficient to show a loss or relinquishment of parental control by a voluntary contract, or by any of the other modes recognized by law, and that the trial court erred in its judgment awarding the custody of the minor child to the grandfather as against the claim of her natural father.

Since the award of custody should have been made in favor of

the father, who, according to the well-established rules of law, was legally entitled thereto, and not in the exercise of an unbridled discretion vested in the trial judge, it becomes unnecessary to consider the comparative fitness of the respective parties. *Bond* v. *Norwood,* supra. It might properly be said, however, that the evidence introduced at the hearing, was wholly insufficient to show that the father is not *now* a fit and proper person to have the custody of his minor child. The conclusions of the two witnesses introduced by the defendant in error that the father is not a fit and proper person to have the custody of his minor child were based upon the facts that in 1941 and 1942 "he [the father] was just a carefree boy, used bad language, and drove wild up and down the road in a car," and "when we ran around together we were pretty rough," One witness testified that she had not seen him since he went into the Army. The other had seen him a couple of times, but not at the places they had previously visited.

The cases cited and relied upon by counsel for the defendant in error are clearly distinguishable on their facts and are not controlling here.

*Judgment reversed. All the Justices concur, except Bell, J., absent on account of illness, and Wyatt, J., who took no part in the consideration or decision of this case.*