19014. JOHNSON *v.* JOHNSON *et al.*

SUBMITTED JULY 12, 1955—DECIDED SEPTEMBER 12, 1955.

*Custer & Kirbo,* for plaintiff in error.

*J. A. Drake,* contra.

HEAD, Justice. The father in his answer sought to have custody of the minor child awarded to his mother. He admitted in his testimony that he was not entitled to custody of the child. Without detailing his various delinquencies, his admissions were in accord with the evidence before the court. The contest as to custody of the child was therefore between the mother of the child and the paternal grandmother. Under these facts the mother would have the legal right of custody provided this right had not been lost in one of the ways recognized by law.

Counsel for the defendant contends that the law vests in the trial judge a broad discretion in all habeas corpus cases involving the custody of minor children. The rules of law applicable to the custody of minor children under Code §§ 74-106, 74-107, and 50-121 have been construed many times by this court. The statutes herein cited do vest in the trial judge a legal discretion.

In *Monk* v. *McDaniel*, 116 *Ga.* 108 (4) (42 S. E. 360), it was held: "While the judge upon the hearing of a writ of habeas corpus for the detention of a child is vested with a discretion in determining to whom its custody shall be given, such discretion should be governed by the rules of law and be exercised in favor of the party having the legal right, unless the evidence shows that the interest and welfare of the child justify the judge in awarding its custody to another." See also *Miller* v. *Wallace*, 76 *Ga.* 479 (2 Am. St. R. 48) ; *Lamar* v. *Harris*, 117 *Ga.* 993, 997 (44 S. E. 866) ; *Sloan* v. *Jones*, 130 *Ga.* 836 (62 S. E. 21) ; *McDowell* v. *Gould*, 166 *Ga.* 670, 672 (3) (144 S. E. 206) ; *Girtman* v. *Girtman*, 191 *Ga.* 173, 181 (11 S. E. 2d 782) ; *Chapin* v. *Cummings*, 191 *Ga.* 408, 413 (12 S. E. 2d 312) ; *Shope* v. *Singleton*, 196 *Ga.* 506 (27 S. E. 2d 26) ; *Hill* v. *Rivers*, 200 *Ga.* 354 (37 S. E. 2d 386) ; *Lucas* v. *Smith*, 201 *Ga.* 834 (41 S. E. 2d 527) ; *Sherrill* v. *Sherrill*, 202 *Ga.* 288, 291 (42 S. E. 2d 921) ; *Waldrup* v. *Crane*, 203 *Ga.* 388 (46 S. E. 2d 919) ; *Peeples* v. *Newman*, 209 *Ga.* 53, 57 (70 S. E. 2d 749).

As to the respective abilities of the paternal grandmother and the mother to care for the child financially, the evidence in each instance is without conflict. There was no evidence that the grandmother owned any property or had any income. She was at all times while the matter was before the court residing in the home of one James Mason, where she had three rooms. It appears from the testimony of the grandmother that, under her contract with Mason (whose wife had left him), it was her duty to be in the home at night with Mason's minor children, his employment being at night. The father of the child was likewise residing in the Mason home. The paternal grandfather does not own a home or any property and spends much of his time in the State of Florida, where he is employed in various jobs. On the date of the final hearing, there was testimony that the father had rented a small apartment which he intended to turn over to his father and mother. It appears from the testimony of the grand-mother that the apartment was too small to include lodgings for her son, the father of the child, as a member of the household, but that he might obtain his meals there if he would reside elsewhere.

The testimony as to the home of the mother shows that she

was residing in the home of her brother-in-law. She was employed by her brother-in-law as cashier in his place of business, and was paid $30 per week, plus room and board for herself and child. The evidence showed that the home of the brother-in-law in Tennessee is located in a good neighborhood, and that he is a successful business man, and willing for the mother to reside in his home. It therefore appears that, insofar as residence is concerned, no advantage could be said to favor the grandmother, and particularly is this true since it appears that her wayward son (the father of the child) had been making the home of the grandmother his home, and may continue to do so.

Counsel for the defendant stresses in his brief the testimony of an aunt and uncle of the father that on one occasion in the summer of 1953, the mother of the child, while visiting in their home, became intoxicated, and that on other occasions in the summers of 1953 and 1954, while in their home, the mother drank some alcoholic beverage. Also relied upon is the testimony of another witness to the effect that he had seen the mother drinking beer in a public place in Florida on several occasions. In response to questioning by the judge, this witness stated that he had never seen the mother drunk. Counsel insists that this evidence shows that the mother is not a fit and proper person to have the custody of her child.

All of this evidence was introduced at the hearing on February 19, when temporary custody of the child was awarded to the mother. It therefore appears that this court is not called upon to evaluate the weight of this testimony as affecting the moral character or fitness of the mother to have the custody of the child.

In *Miller* v. *Wallace,* supra (p. 484), with reference to the discretion of the trial court, it was said in part: "Discretion is a science or understanding to discern between falsity and truth, between wrong and right, between shadow and substance."

Notwithstanding the testimony upon which counsel for the defendant relies, the trial judge awarded temporary custody of the child to its mother for a period in excess of two months, and permitted her to take him beyond the jurisdiction of the courts of this State on her promise that she would return the child at a time set by the trial judge.

A judgment in a habeas corpus case is impressed with the same

degree of finality on the facts as they then exist as is any other decision of any court involving the custody of minor children. *Jordan* v. *Jordan*, 195 *Ga.* 771 (25 S. E. 2d 500), and cases cited; *Handley* v. *Handley*, 204 *Ga.* 57 (48 S. E. 2d 827).

What is here said is not intended as an inference that the trial judge erred in hearing further testimony on April 25. This court is not concerned with the motives which may have prompted the trial judge to conduct three separate investigations and enter three separate orders. It may be assumed, we believe properly, that he was seeking to ascertain the truth. The testimony of April 25, however, in no wise related to the fitness or the character of the mother. The evidence as to her fitness, her worthiness or unworthiness, was before the judge at the time he permitted her to take the child out of the State and keep it for more than two months, on her oral promise that it would be returned at a stated date. The judgment entered on February 19 was therefore final and conclusive on the evidence as to the fitness of the mother to have custody of her child.

It is insisted by counsel for the mother that there was an apparent desire on the part of the trial judge and counsel for the defendant that the child remain in Miller County. Since the child was in Florida in the custody of the mother where it might have remained, insofar as this record shows, no special right or privilege could be said to accrue to the father for slipping the child away while it was temporarily in the possession and custody of the maternal grandfather and thereafter bringing the child into this State. There is no rule in this State that a trial judge may not award the custody of a minor child to a parent residing beyond the jurisdiction of the courts of this State. *Pruitt* v. *Butterfield*, 189 *Ga.* 593 (6 S. E. 2d 786) ; *King* v. *King*, 202 *Ga.* 838 (44 S. E. 2d 791).

In *Girtman* v. *Girtman*, supra, a habeas corpus action between the paternal grandmother and the mother, involving the custody of a minor child, Mr. Justice Grice, speaking for the court, said in part (p. 181): "Far be it from any member of this court to undervalue the tender ministrations of a grandmother. Sweet memories of such will linger so long as life itself shall last, even after the vase is broken and shattered. But her loving care was never meant to take the place of a mother's."

In *Chapin* v. *Cummings,* supra, Mr. Chief Justice Reid, in speaking for the court, defined what is meant by the "paramount interest of the child," and said in part (p. 413) : "The 'paramount interest of the child' shall not be taken to mean that the court would in any given contest simply determine where the child might have the better financial, educational, or even moral advantages. Because, if that would be the test, the family ties of blood representing the very fiber and bedrock of our society might be endangered, and the courts called on to become arbiters for social betterment. This was never intended. The function of the court comes into play only for the protection of the child—protection from the consequences which misconduct, or failure to provide, or similar acts or omissions on the part of its erring parents may bring about."

In the present case there is nothing in any order of the court to the effect that the mother is an unfit or improper person to have the custody of her child. The order of the trial judge on February 19 was entered after all testimony attacking the mother's fitness was before the court, and there was nothing before the court on April 25 to show that the judgment of February 19 should not be continued in full force and effect.

*Judgment reversed. All the Justices concur.*