### 21942. MILLS v. MILLS.

ARGUED FEBRUARY 11, 1963—DECIDED MARCH 7, 1963.

*D. Field Yow, Jay M. Sawilowsky,* for plaintiff in error.

*Cumming, Nixon, Eve, Waller & Capers, D. Hugh Connolly,* contra.

ALMAND, Justice. This writ of error presents but one question: In an action for divorce by the wife on the ground of cruel treatment and a cross-action by the husband on the ground of adultery in which both prayed for the custody of their minor child, and a divorce is granted on the husband's cross-petition, did the court err in awarding the child to its maternal grandparents?

*Code* § 30-127, as amended (Ga. L. 1957, p. 412), provides that

"in all cases of divorce granted, the party not in default shall be entitled to the custody of the minor children of the marriage." In the instant case, when a divorce was granted to the husband on his cross-petition, the sole and exclusive right to the custody of the child vested in him. *Hill v. Rivers,* 200 Ga. 354 (37 SE2d 386). As between the father of the child and third persons this right of custody and control could be lost only in one of the six ways provided in *Code* § 74-108. One of the ways in which a father may lose his parental right to control and custody is by cruel treatment of the child. Unless parental control has been lost by one or more of the ways prescribed by this Code section, the father's prima facie right to the custody and control of his minor child as against the claim of a third person is not subject to legal challenge. *Bond v. Norwood,* 195 Ga. 383 (24 SE2d 289); *Waldrup v. Crane,* 203 Ga. 388 (1) (46 SE2d 919); *Woods v. Martin,* 212 Ga. 405 (1) (93 SE2d 339).

It is the contention of the mother, the defendant in error, that the plaintiff in error, the father, has lost his right to the custody of the child by reason of his cruel treatment. We therefore look to the evidence to determine whether it is legally sufficient to support this claim. All the evidence that relates to the charge of cruelty was adduced on the divorce trial. The mother, testifying as to an occurrence of more than one year prior to the separation, said: ". . . he was very violent toward me and the baby. He was fussing; he was throwing off on my people— the way they had everything they wanted, and especially on my baby brother. He's just four years old now, and he threw off on him and we got in an argument about it, and he knocked me over the livingroom stove, and I had the baby in my arms. Over the stove she went too, but she didn't get hurt because I managed to keep her from hitting her head." After a separation and a reconciliation, to this question, "During this period of reconciliation while you were living together . . . how did he evidence his attitude toward the child?", she gave the following answer: "That's the only treated us is when he knocked me down with her in my arms, but he was never loving toward her. He never gave her the proper affection a father should give a baby, but other than that he didn't mistreat her. He was just cold

toward her." On cross-examination she testified: "After we had been out celebrating about going back together, he drove off into the woods onto a dirt road close by his mother's house and he tried to choke me there. . . Yes, that was the first time. The second time was when he knocked me over the heater and I had Gwen in my arms, but I managed to fall so she didn't hurt herself . . . he didn't have the decency to let me put her down." John Barnes, III, her brother, testified that he was present when the plaintiff in error struck his sister: "So my sister stood up and they got to arguing. So John hit my sister and knocked her over the stove with the baby in her arms and the baby hit the floor and started crying. So I went next door and got Mrs. Barnes."

Cruel treatment of human beings has been defined as the wanton, malicious and unnecessary infliction of pain upon the body or feelings and emotions of the individual; abusive treatment; inhuman or outrageous treatment. Black's Law Dictionary. See also *Odom v. Odom,* 36 Ga. 286, and *Code* § 30-102 (10). The evidence relating to cruel treatment as shown above relates entirely to the conduct of the husband to his wife. It falls totally short of any act that shows cruel treatment directed to the child of the parties. There is no evidence to warrant the conclusion, factually or legally, that the father forfeited his right to the custody of his child by reason of cruel treatment of the child.

The court erred in awarding the child to its maternal grandparents.

*Judgment reversed. All the Justices concur.*