22248. PERKINS v. COURSON et al.

SUBMITTED NOVEMBER 12, 1963—DECIDED FEBRUARY 6, 1964.

*Albert E. Butler,* for plaintiff in error.

*Thomas & Thomas, W. Glenn Thomas, Jr.,* contra.

GRICE, Justice. This is a review of an award of custody of a child to its grandparents. The father, Johnnie Perkins, filed a petition for habeas corpus in the Superior Court of Wayne County against the maternal grandparents, Mr. and Mrs. Herbert Courson. The grandparents filed their response which prayed that custody be awarded to them. Subsequently, the trial judge entered an order denying the writ of habeas corpus and awarding the child to the grandparents, with visitation privileges to the father. The exception is to that judgment.

The father's petition alleged, insofar as material here, as follows: that he is the sole surviving parent and father of his named minor son, five years of age; that the grandparents are illegally detaining the child from him; that he has demanded said child but has been refused; that the maternal grandparents, upon the mother's death, took possession of the child and advised petitioner that they would keep it and have failed to redeliver it; that such detention and restraint is illegal; that he, as the child's father, is entitled to its custody and control and has not by contract or otherwise released his rights; and that he is an "able bodied man of good habits and has a wife, home and other children, earning a good living with good reputation in which to provide for" his child. The prayer was for issuance of the writ against the grandparents requiring them to produce the child.

The grandparents in their response to the petition denied all its allegations, except that petitioner is the sole surviving parent and father of the child and that they have possession of it.

In the nature of a cross-action they alleged substantially as follows: They are the maternal grandparents of the child. Its mother separated from its father on June 17, 1958, when it was only two and a half months old, and it has remained in their home and in their possession since then. The child's mother was divorced from the father in November, 1958, and was awarded custody in a decree which required the father to pay ten dollars weekly for the child's support. They have maintained, supported and cared for it in their home in Jesup, Georgia, since June 17, 1958. The only help or assistance received for the child's support and maintenance was what its mother gave them. The father apparently had no love for the child, failing for eight to ten months at a time to visit with it. He has "wholly failed to provide for the necessaries of life for said child and has abandoned same to its mother and [the grandparents], thereby forfeiting his parental authority over said child as provided by Georgia Code 74-108 (3)." He has failed to pay any money required by the court decree, and they have paid and are paying all expenses for said child.

The child's mother died in February, 1963, whereupon the father told the grandmother that he appreciated what she had done for it, "that she had been a good mother for him, that the child was in a good home, and so far as he was concerned they need not worry that the child could stay there." The father "does not love said child, has failed to contribute to its support, has abandoned it all times past and is now for the first time asserting any semblance of fatherhood for the child." The father has remarried, has two children, and they live in a house with no modern conveniences, and the child will receive no attention if awarded to him.

The father "is physcho [sic], that his mind at times is unbalanced and has a violent temper, beat said child's mother at his pleasure during their marriage and since divorce broke his ex-wife's arm, tore her clothes off her, bruised and choked her without cause or reason."

The grandparents have registered the child in kindergarten for September, 1963, have bought and are paying for educational insurance for it, and "have done and will do more for said child's

welfare than [the father] has done or will do. They love said child and want its custody."

They prayed that, because of the father's failure to provide necessaries for it, his failure to aid or assist in caring for its welfare, his failure to bestow or show any fatherly affection for it, and his total lack of interest and abandonment of it, the father's prayers be denied and that they be awarded full custody.

■ While the foregoing pleadings raised issues of failure of the father to provide necessaries for the child and abandonment by him under *Code* § 74-108 (3), there was no evidence to sustain those issues. The father's uncontroverted testimony was that during the period when the mother had custody he gave her "some money" for the child. The evidence also shows conclusively that after the mother's death, while the child was in the grandparents' possession, they cared for it without making any request whatever of the father for its support or maintenance. Thus, there was no forfeiture by the father of his parental rights upon this ground. *Rawdin v. Conner,* 210 Ga. 508 (2, 3) (81 SE2d 461).

■ The pleadings also raised an issue as to the father's fitness as a custodian for the child. The grandparents denied the father's allegation that he was an able bodied man "of good habits" and "with a good reputation in which to provide for the child" and alleged his inattention, lack of recognition and absence of love for the child and that he is "physcho," mentally unbalanced at times, has a violent temper, and has committed specific physical acts of violence upon the mother before and after the divorce. The fact that the paragraph in which the grandparents prayed for relief did not recite or characterize the allegations of unfitness which were made in the previous paragraphs did not eliminate this issue from the case. In this connection it should be borne in mind that strict technical pleading is not required in habeas corpus proceedings as to the custody of minor children. *Sheppard v. Sheppard,* 208 Ga. 422 (1) (67 SE2d 131) ; *Barber v. Wells,* 213 Ga. 1 (96 SE2d 595).

There was evidence to sustain the allegations as to the father's unfitness. He acknowledged: "Yes, I have been in jail several times for fighting and being drunk and I was charged with assault and battery. Yes, I was accused of raping a negro

woman and was held in jail for a while. This was since our divorce." The grandmother testified: "Sometimes [the father] has waited for periods of six to eight months before he would come or send for his son . . . [He] has a bad temper and has temper fits. I have seen him hit his face with his fists until his face purely bled—during these fits, he would act wild. He had an awful temper. Since their divorce, I know that [he] broke [the mother's] arm and beat her. She called me to Gene's Bar-B-Q where her dress had been torn off and I carried her home. [He] has been to our house while he was visibly drinking."

It is the general rule that upon the death of the parent who has custody of a child under a divorce decree the right of custody is vested in the surviving parent. *Girtman v. Girtman*, 191 Ga. 173 (5) (11 SE2d 782). But we believe this rule is subject to the discretionary power of habeas corpus courts under *Code* §§ 50-121 and 74-106, looking to the child's interest and welfare. The question here, then, since the father thus acquired the right to custody, is whether the trial judge was justified under *Code* §§ 50-121 and 74-106 in awarding custody to the grandparents, in view of the evidence as to the father's habits and conduct.

The position has been advanced, in consideration by this court, that since this father had not lost his parental right by one of the modes of *Code* § 74-108, 74-109 or 74-110, he is entitled to custody of his child as a matter of law, and his fitness or unfitness is irrelevant to this determination. (*Code* § 74-108 provides that parental power shall be lost by voluntary release to a third person, consent to adoption by a third person, failure to provide necessaries or abandonment, consent to the child's receiving the proceeds of his own labor, consent to marriage of the child, cruel treatment; *Code* § 74-109 authorizes the ordinary to appoint a guardian of the person of a child whose parents treat it cruelly; *Code* § 74-110 provides that the ordinary may commit to an institution, appoint a proper guardian, or make such other disposition provided by law for a child under the age of 12 when it is made to appear that the child is being reared under immoral, obscene, or indecent influences likely to

degrade its moral character and devote it to a vicious life.) That position, as we understand it, is based on the decision of this court in *Bond v. Norwood,* 195 Ga. 383 (24 SE2d 289), where, in affirming an award of custody to the father, it is stated as the basis for the decision that unless the parental power has been lost by one of the modes of the above mentioned Code sections, "the father's right to the custody of his minor child, as against the claim of a third person, is not subject to legal challenge" and there is no discretionary power under *Code* § 50-121 to make an award to a third person.

Although we agree with the *result* in *Bond v. Norwood,* supra, we cannot agree with the basis stated for that result. In that case no attack was made on the father's fitness and the statement of facts recites that his neighbors testified that "he was honest, industrious, sober, and of good reputation," and he had not forfeited his parental right by any of the modes of *Code* § 74-108, 74-109 or 74-110. Thus, that father possessed right *and* fitness. Therefore, the *result* there was correct. The above mentioned basis of decision, which is contrary to earlier decisions of this court, was not necessary to the decision. For this reason, we deem *Bond v. Norwood,* 195 Ga. 383, supra, distinguishable from the instant case. However, disagreeing with the basis for its result, we cannot agree with the position advanced in reliance upon that decision.

*Code* § 50-121 provides that: "In all writs of habeas corpus sued out on account of the detention of a wife or child, the court, on hearing all the facts, may exercise his discretion as to whom the custody of such wife or child may be given, and shall have power to give such custody of a child to a third person."

*Code* § 74-106 states: ". . . In cases of separation of the parents, or of the death of one and the subsequent marriage of the survivor, the court, upon writ of habeas corpus, may exercise a discretion as to the possession of the child, looking solely to his interest and welfare."

As to the exercise of such discretion by trial courts, the rule is that "While the judge, upon a hearing of a writ of habeas corpus for the detention of a child, is vested with a discretion

in determining to whom its custody shall be given, such discretion should be governed by the rules of law, and be exercised in favor of the party having the legal right, *unless the evidence shows that the interest and welfare of the child justify the judge in awarding its custody to another.*" *Butts v. Griffith,* 189 Ga. 296 (2) (5 SE2d 907), and cases cited therein. (Emphasis ours.)

As to the role of reviewing courts where the habeas corpus court has exercised its discretion, the rule is that, " 'The judgment of the court upon the facts in cases of habeas corpus, is analogous to the verdict of the jury, and will not be disturbed by the reviewing court if there be enough to support it, although there may have been other testimony strongly in conflict with it.' *Starr v. Barton,* 34 Ga. 99. The determination of what is for the best interests of the child is a matter resting in the discretion of the trial court; and such discretion will not be controlled by the reviewing court, unless abused." *Bailey v. Warlick,* 196 Ga. 642, 648 (27 SE2d 322) (one Justice disqualified).

Time after time, this court has held that the legal or parental right to custody is subject to challenge on the ground of *unfitness* for the trust, and that, under *Code* § 50-121, the court in habeas corpus cases has discretion to award custody to a third person where such unfitness is found. The fact that unfitness is not capable of exact definition does not prevent determination of that issue. This court has cautioned that challenge on the ground of unfitness must be by "clear and satisfactory proofs," *Miller v. Wallace,* 76 Ga. 479 (2b), and "for grave and substantial cause," *Sloan v. Jones,* 130 Ga. 836 (62 SE 21), not merely that the child "might have the better financial, educational or even moral advantages." *Chapin v. Cummings,* 191 Ga. 408, 413 (12 SE2d 312). But never, so far as we are able to ascertain, has this court approved an award to a person having the legal right but shown to be unfit; neither has it reversed an award to a third person where the person with the legal right was found unfit.

We review now decisions of this court which have sustained challenges to the right of custody on the ground of unfitness.

In *Hunter v. Dowdy,* 100 Ga. 644 (28 SE 387), the mother

brought a habeas corpus proceeding against a Mrs. Dowdy and an orphanage. The trial court awarded the child to the orphanage. In affirming that award, this court stated: "An elaborate discussion of the facts of this case would be unprofitable. The law of it is free from doubt. We simply hold that a habeas corpus court, in deciding a controversy over the custody of a young girl between her mother and another, commits no abuse of discretion in awarding the child to the latter, if there is evidence to warrant a finding that the mother is a lewd woman. It makes no difference who the other contestant may be." The father being dead, the right to custody of the child had passed to the mother, and nothing appeared as to her having relinquished or forfeited that right by any of the modes of the present *Code* § 74-108 or 74-109. Nor was the award pursuant to the present *Code* § 74-110, since the child was beyond the statutory age of 12 years. This court obviously placed its affirmance solely upon the mother's unfitness as it related to the child's welfare.

In *Richards v. McHan,* 129 Ga. 275 (58 SE 839), the contestants were the father and the maternal grandparents, the mother being dead. The father alleged that he had not "relinquished nor given up nor forfeited his rights to said child by any reason known to law, or by any other mode." The grandparents contended that he had relinquished his right by a contract, and also that he was unfit because of his drunkenness and immorality. The trial court awarded the child to the grandparents. Upon review, this court held, first, that the evidence did not show any surrender or relinquishment of the father's right to custody of the child by contract. Next, it made this significant statement: ". . . We have still to consider whether the evidence as to the unfitness of the [father] was such as to authorize the judgment complained of; and if it was, we will assume of course that the judgment was based upon that, and not upon the untenable ground that the contract was established. In awarding the child to the respondent, and in refusing to order him delivered into the custody of his father, the judge was in the exercise of a very wide discretion with which he is vested by law. It is not an unlimited discretion, and transgression of those limits would amount to an abuse of

discretion which a reviewing court would correct; but before this court would be authorized to interfere with the decision of the lower court in the exercise of its discretion, it must appear that in the exercise thereof there was a patent and flagrant abuse of the discretionary power." It then pointed out that under the present *Code* § 74-108, "Prima facie the right of control and custody of a child until majority remains in the father," and "in order to divest him of this right upon the ground of unfitness for the trust, proof brought to show the alleged unfitness should be clear and convincing." Further, "in a case like the one at bar, we have to decide whether the evidence was such in its range, or because of conflicts therein, as to allow an exercise of discretion. An affirmative answer to that question requires that the judgment be affirmed." The court ruled that the evidence authorized the finding of unfitness of the father and upheld the award to the grandparents.

In *Brown v. Harden*, 150 Ga. 99 (102 SE 864) (one Justice absent), the grandmother brought a habeas corpus suit against the mother and a third person on whose land the mother lived, alleging that the mother was a lewd woman and was living in a state of adultery with the codefendant. The trial court awarded the three children, ages 14, 16 and 18, to two uncles and an aunt, and the defendants excepted. This court affirmed, citing the present *Code* § 50-121 and decisions of this court for its holding that "Where the respondent is shown to be an improper person to have the custody of such child, the court may exercise its discretion as to whom the custody of such child should be given, and shall have power to award the custody to a third person. The interest of the child must be given consideration." As in *Hunter v. Dowdy*, 100 Ga. 644, supra, the father being dead, the right to custody had passed to the mother, and nothing appeared as to her having relinquished or forfeited that right by any of the modes of the present *Code* § 74-108 or 74-109. Also, the award under review was not pursuant to the present *Code* § 74-110, since all of the children were over the statutory age of 12 years.

In *Hammond v. Murray*, 151 Ga. 816 (108 SE 203), the contest was between the child's sister, who had been appointed guardian of the person of the child and thus possessed the right

to its custody, and the child's father. This court affirmed the award to the father, stating that there was some evidence that the sister-guardian was not a proper person to have the care and custody of the minor, while there was evidence showing that the father was a proper person.

In *Butts v. Griffith*, 189 Ga. 296, supra, the child's parents brought a habeas corpus suit against another couple, who were not related to the child, but who with the parents' consent had cared for it at intervals since it was four months old. The couple resisted the suit upon the ground that the parents "were not fit persons to rear the child." They claimed no gift or contract whereby they acquired the right to the child. Citing *Code* § 50-121 and several of its decisions, this court held that "Under the evidence the judge was authorized to find that it was to the best interest and welfare of the child to be left in the custody of the respondents; and under the peculiar facts of the case as to character and conduct of the mother of the child, condoned by the father, and their continued living together, the judge did not abuse his discretion in awarding custody of the child to the respondents." Here, the record shows no forfeiture or relinquishment under any of the modes of the three Code sections heretofore referred to. Again, the decision turned on parental unfitness as it related to the welfare of the child.

In *Harter v. Davis*, 199 Ga. 503 (34 SE2d 657) (by five Justices), the issue was between the mother and grandmother, the latter seeking custody on the ground that the mother was unfit. The evidence showed that the mother was immoral. In affirming the trial court's award of the two oldest children to the grandmother, this court said: "While the judge in awarding the custody of a child is vested with a wide discretion, such discretion should be governed by the rules of law, and in a case where as here rivalry between parents for the custody of a child is not involved, should be exercised in favor of the party having the legal right, unless the evidence shows that the interest and welfare of the child justify the judge in awarding its custody to another," citing *Code* § 50-121 and several decisions of this court. The record shows there had been no forfeiture of

the right to custody by the mother on account of *Code* § 74-110, or by the modes of *Code* § 74-108 or ,74-109.

In *Lucas v. Smith*, 201 Ga. 834 (41 SE2d 527) (one Justice concurring in the judgment), the mother having been killed, the maternal grandfather sought custody of her children in a habeas corpus proceeding against the paternal grandmother. This court affirmed the trial court's award to the maternal grandparents. It rejected the paternal grandmother's contention that, under *Code* § 74-108, parental power of the father over his children can be lost only by one of the modes provided therein, that the father had not thus lost his parental power, and therefore, that under a contract whereby the father relinquished parental control to her, she was entitled to custody of the children. This court stated that *Code* § 74-108 must be construed with *Code* § 50-121. Then, applying the law as stated in *Williams v. Crosby*, 118 Ga. 296 (45 SE 282), it held that ordinarily such transfer of parental power by the father where the mother is dead would be valid, but here there was evidence of " 'misconduct or other circumstances' as to the father, which at least places him under suspicion as the murderer of his wife, the mother of the children. Such evidence makes this case exceptional on its facts, and authorizes a judgment based on the court's determination of what is best for the welfare and happiness of the children, independently of any expression or·wishes of the father."

In *Sturkie v. Skinner*, 214 Ga. 264 (104 SE2d 417) (two Justices concurring specially and one Justice concurring in the result), where the issue was between the father and maternal grandparents, this court held that ". . . the trial judge was fully authorized to find and conclude that the plaintiff was an unfit person to have custody and control of his minor daughter and for that reason had forfeited his parental rights." No forfeiture of parental right by any of the modes of *Code* § 74-108, 74-109 or 74-110 was involved. But the father was under suspicion of murdering his wife, and the evidence detailed the facts causing that belief.

In *Yancey v. Watson*, 217 Ga. 215, 217 (121 SE2d 772) (one Justice concurring specially), the controversy was also between

the father and maternal grandparents, and there was no loss of paternal rights under *Code* § 74-108, 74-109 or 74-110. However, the father had been convicted of involuntary manslaughter for the death of his wife, was then on parole, and thus was considered unfit for custody. This court affirmed the award to the grandparents, stating that: "It is true that the father has the legal right to have the custody of his infant child in a general sense. But this is not due to any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of his natural protector, both for maintenance and education. The right may be relinquished or forfeited by contract, by his bad character and immoral habits, or by his misfortune in not being able to give it proper care and support."

It is noteworthy that in other cases where there was no forfeiture or relinquishment under any of the modes of *Code* § 74-108, 74-109 or 74-110 and where the parent or other person having the legal right was *fit,* so as to require an award to that person rather than to a third person, the significance of custodial fitness as it relates to the welfare of the child has been carefully recognized.

In *In re Mitchell,* R.M. Charlton 489, a contest between the father and stepfather, the court found that the father had not forfeited his legal right to custody and that he was a fit and proper person. In discussing the latter aspect, the court said: "But notwithstanding this legal right of the father, circumstances may exist which would justify a court in this proceeding, in refusing to lend its aid to him in procuring the custody of his child, or even withdrawing the infant from his custody, when its morals, its safety, or its interests seem to require it. All legal rights, even those of personal security and liberty, may be forfeited by improper conduct, and so this legal right of the father to the possession of his child must be made subservient to the true interests or safety of the child, and to the duty of the State to protect its citizens of whatever age." (P. 494). This opinion has been expressly approved in *Boyd v. Glass,* 34 Ga. 253, 258, and *Miller v. Wallace,* 76 Ga. 479, 486, supra.

In *Miller v. Wallace,* 76 Ga. 479, supra, this court stated that

the solution of the question as to whether the trial court abused its discretion in taking the child from its father and awarding its custody to the grandparents, turned upon "whether the father, by a voluntary contract, released his legal and parental right to the .control of his child to . . . [the grandparents], or whether he consented to her adoption by them, . . . for it is not pretended that he forfeited his right to her custody and control, either by a failure or inability to provide necessaries for her, or by abandoning her, or by cruel treatment, *or that by reason of his bad character and immoral habits, he could not be trusted with her rearing and education without detriment to her well being"* and "It is indisputable that the father, under the law, has the control of his minor child, and that this can be relinquished or forfeited only in one of the modes recognized by law, *including those above specified*, with some others not applicable to the present status of this case [citing the present *Code* §§ 30-127, 74-106, 74-108 and 74-109]." (Emphasis ours.) This court held that the trial court had abused its discretion in awarding the child to the grandparents since the father was fit and had not relinquished his right to custody.

In *Wigley v. Mobley*, 101 Ga. 124 (28 SE 640), this court held: ". . . the evidence not showing that, . . . the father, was an unfit or improper person to have the custody of the child, or that its interest and welfare required that its custody should be given to . . . another," custody should have been awarded to the father.

In *Carter v. Brett*, 116 Ga. 114 (42 SE 348), it was held an improper exercise of discretion to deprive a person of custody when the evidence showed him to have the "right and fitness."

In *Sloan v. Jones*, 130 Ga. 836, supra, the court pointed out that no attack was made upon the father's fitness, but acknowledged and stated the rule that although prima facie right to the custody of a child is in the father, this may be resisted on the ground of unfitness for the trust.

In *Girtman v. Girtman*, 191 Ga. 173 (6), supra, it was ruled that a grandmother's habeas corpus petition "not alleging that the mother is an unfit person to have the custody, should be dismissed on general demurrer."

For other cases which, although either not involving any attack on fitness or not finding unfitness to exist, recognize that the legal right to custody may be challenged on the ground of unfitness of the person having the legal right to custody, see *Taylor v. Jeter*, 33 Ga. 195 (81 AD 202); *Monk v. McDaniel*, 116 Ga. 108 (4) (42 SE 360); *Saxon v. Brantley*, 174 Ga. 641, 644 (163 SE 504); *Fowler v. Fowler*, 190 Ga. 453 (1) (9 SE2d 760); *Brown v. Newsome*, 192 Ga. 43 (4) (14 SE2d 470); *Kilgore v. Tiller*, 194 Ga. 527 (22 SE2d 150); *Shope v. Singleton*, 196 Ga. 506 (2) (27 SE2d 26); *Hill v. Rivers*, 200 Ga. 354, 363 (37 SE2d 386); *Roebuck v. Calhoun*, 201 Ga. 496 (40 SE2d 142); *Sherrill v. Sherrill*, 202 Ga. 288, 291 (42 SE2d 921); *Johnson v. Johnson*, 211 Ga. 791, 792 (89 SE2d 166); *Blakemore v. Blakemore*, 217 Ga. 174 (2) (121 SE2d 642). See *Sloan v. Jones*, 130 Ga. 836, supra, and *Chapin v. Cummings*, 191 Ga. 408, supra, for reviews of decisions which show recognition of the significance of fitness.

We believe that the foregoing review correctly tracks the law. And, contrary to what is said in *Bond v. Norwood*, 195 Ga. 383, supra, they plainly permit challenge by third persons of legal right to custody on the ground of unfitness, and in such cases authorize the discretion of *Code* § 50-121 even though the parent has not lost his legal right by any of the modes of *Code* § 74-108, 74-109 or 74-110.

It should be emphasized that *fitness* is not necessarily synonymous with the absence of the conduct penalized by *Code* §§ 74-108, 74-109 and 74-110. The fact that a parent has not forfeited or relinquished his parental right by any ·of the modes of those sections does not establish him as fit. The issue of fitness is much broader than whether a parent has voluntarily contracted away his right, or consented to an adoption, or failed to provide necessaries, or abandoned, or consented to the child's receiving the proceeds of his own labor, or consented to its marriage, or treated it cruelly, under *Code* § 74-108; or whether, because of cruel treatment, the ordinary has appointed a guardian for the child under *Code* § 74-109; or whether, because a child under 12 years of age has been found under immoral, obscene or indecent influences, the ordinary has committed it to an institution under *Code* § 74-110.

Beyond the events recited in those provisions, it may be shown, for instance, that the parent is afflicted either mentally or physically to the extent that he cannot provide any care for the child; that he suffers from a serious and contagious disease which would endanger the child; that he has criminal tendencies making it hazardous to expose a child to him; or that he has other such disqualifications not coming within those sections. Furthermore, it may be shown that, although completely immoral and degenerate, a parent has had insufficient contact with the child for the events covered by those Code sections to have occurred. Award of a child to such an unfit person simply because he has not lost his right to custody by one of the modes of those Code sections would be contrary to law and reason. A construction of *Code* § 50-121, as in *Bond v. Norwood,* 195 Ga. 383, supra, requiring such an award renders that section meaningless and is erroneous.

Since *Bond v. Norwood,* supra, there have been other cases which may be classified with it, i.e., they state that where the legal right to custody has not been lost by one of the modes of *Code* § 74-108, 74-109 or 74-110, that fact is controlling and the issue of fitness is not to be considered and, therefore, that *Code* § 50-121 does not afford the trial judge discretion to make awards to third persons in such cases. See *Morris v. Grant,* 196 Ga. 692 (27 SE2d 295); *Waldrup v. Crane,* 203 Ga. 388 (46 SE2d 919) (by five Justices); *Baynes v. Cowart,* 209 Ga. 376 (72 SE2d 716) (one Justice dissenting); *Locke v. Grimes,* 211 Ga. 447 (86 SE2d 303); *Gaskins v. Beasley,* 216 Ga. 19 (114 SE2d 373). In *Morris v. Grant, Baynes v. Cowart,* and *Gaskins v. Beasley,* as in *Bond v. Norwood,* 195 Ga. 383, supra, no attack was made on the fitness of the person having the right to custody. In *Waldrup v. Crane* and *Locke v. Grimes,* attacks were made on the fitness of the person having the legal right to custody, but in neither of them does it appear that unfitness actually existed. The *Waldrup* opinion, although stating that it was unnecessary to consider fitness, adds, "It might properly be said, however, that the evidence introduced at the hearing, was wholly insufficient to show that the father is not *now* a fit and proper person to have the custody of his minor child."

(P. 393.) The *Locke* record shows no evidence of unfitness of the father there but, on the contrary, shows that he was considered entirely fit and proper as a custodian for the child. Thus, the *result* in all of these cases was correct. As in *Bond v. Norwood*, 195 Ga. 383, supra, it is the reasoning or basis for that result that we disapprove of as being contrary to the earlier decisions of this court hereinbefore referred to.

Our position here accords with every word of the following pronouncement of that illustrious jurist, Joseph R. Lamar, in *Williams v. Crosby*, 118 Ga. 296, 298, supra: "But in every case regardless of the parties, the welfare of the child is the controlling and important fact. This is not intended to nullify the laws of nature; for in most instances it will be found that the legal right of the parent and the interest of the child are the same. But if through misconduct or other circumstances it appears that the case is exceptional, and that the welfare of the child requires that it should be separated even from its parent, the parens patriae must protect the helpless and innocent. They are the wards of the court, the hope of the state, and the seed corn of the future."

In the present case there was ample evidence to authorize the trial court to find that the father was not a fit person to have custody and, therefore, pursuant to *Code* §§ 50-121 and 74-106, that the interest and welfare of the child required that its custody be awarded to the grandparents. The evidence was undisputed that they were fit custodians and would provide a good home for the child. Under these circumstances we cannot say that the trial court abused its discretion in awarding custody of the child to its grandparents.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Candler and Almand, JJ., who dissent.*

DUCKWORTH, Chief Justice, dissenting. A more solemn question for decision can never confront this court than that of taking from a parent its own flesh and blood and giving it to another. This is precisely what the majority has approved in this case. To the judges it was merely deciding a case, but to the father—whose heart bleeds for his own child—and the child itself who is thus torn from its father by the judicial severance

of the most humane, the most sacred ties that can ever bind man to man, it is cruelty that defies description. If every judge could experience the loss of his own child, simply and solely because some judge happened to believe it would promote the best interest of the child while another judge could lawfully have held on the same identical facts that his child could not be thus taken from him, I percieve that they would not usurp legislative powers but would follow the law as the legislature has enacted it, which would demand that every judge decide the case upon fixed law, thus affording equal protection as is demanded by the Constitution, State and National. The curse of tyrants ought not to be perpetuated to inflict human misery in the name of a judge who arrogates to himself the right to make the retention of a child by its parents depend upon his will. This case vividly demonstrated the danger of such. The judges who have taken this father's child from him have allowed a mere accusation of a crime to weigh against him in the face of the universal American principle of law that everyone is presumed innocent until guilt has been proven. The mere accusation could have been made against every judge that has allowed it to influence his judgment. Of course it was ugly for this father to beat himself when in anger, but he did not beat this child. And any crime of which he might have been guilty did not involve moral turpitude. What man can say he has never committed a crime? Let him look at his driving record and elsewhere and say he is innocent. If the test of unfitness that has been applied here should be applied to all parents, a cruel judge could rob all of them of their most precious possessions, their children.

But the majority glibly pass over *Bond v. Norwood,* 195 Ga. 383 (24 SE2d 289); *Watkins v. Terrell,* 196 Ga. 651 (27 SE2d 329); *Morris v. Grant,* 196 Ga. 692 (27 SE2d 295); *Woods v. Martin,* 212 Ga. 405 (93 SE2d 339); and *Mills v. Mills,* 218 Ga. 686 (130 SE2d 221); all concurred in by all the Justices and holding that a parent can be deprived of the custody of his child under *Code* §§ 74-106 and 50-121 only when he has lost his right thereto by one of the manners specified in *Code* §§ 74-108, 74-109 and 74-110; and flatly contradict these full

bench decisions by which every judge in this State is bound. There is one and only one lawful way this court can rule contrary to these decisions, and that is by reviewing and overruling them. Nothing is accomplished by the voluminous opinion's review of countless older cases. A mere reading of the opinion in *Bond v. Norwood,* supra, reveals unmistakably that this court covered all the decisions that the majority mentions, and all seven justices concluded, and so ruled, that they did not mean what this majority of four out of seven say they mean. After reading all that is said in all the past decisions of this court about the consideration of the best interest of the minor in contests between a parent and a third party, we took note of *Code* § 74-107 where the legislature expressly limited this consideration to contests between the parents. Why did they thus limit it to such a contest? The only sound reason to be found is that they did not intend for that rule to apply in contests between parents, who by law were entitled to the custody which could be lost only in the manner specified by the law, and third persons.

We also respected the ruling in *Miller v. Wallace,* 76 Ga. 479, at page 486, as follows: *"Under the 'discretion' vested in him, no judge has the authority to disregard or even to impair any 'acknowledged or established right of a party by its exercise, and if he does so, it would seem to follow, as a necessary consequence, that he abuses that discretion."* We then read in *Code* § 74-108 where it is said: "Until majority the child shall remain under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power shall be lost by: . . ." then follow specifications of the ways in which it can be lost. But among them is not to be found "welfare and best interest of the child." Therefore, we found a right established by law, as well as the law that would forfeit that right, and followed the ruling that no judge could disregard or even impair that right by the claim of exercising a discretion whether he was acting under *Code* § 50-121 or 74-106, and so ruled. The individual Justices constituting the majority might consider that decision an unsound construction of the past decisions and the Code sections, but they are bound

thereby unless that decision is overruled. The majority opinion cites *Richards v. McHan,* 129 Ga. 275 (58 SE 839). While there the minor was taken from the father, yet Justice Beck cited and commended *Miller v. Wallace,* 76 Ga. 479, and concluded the opinion with: "Certainly where the father is one of the parties to such a case, before the principle just stated [counsel strongly urged in argument before us that in every case regardless of the character of the parties, the welfare of the child is the controlling and important fact] becomes active, the father's prima facie right to possession and control of the child should be shown to have been forfeited or at least very radically impaired."

In rendering the decision in *Bond v. Norwood,* 195 Ga. 383, supra, we noted the many cases in which a parent lost his child to a third person, and the many statements that the welfare of the child was considered. We found that the only way to reconcile them was to accept their rulings that the right of custody was vested in the parents by law, and this right could be neither disregarded nor impaired under the claim of exercising discretion, then construed their references to the welfare of the child to be their opinion that the parent had done one or more of the things which the law said forfeited his right, hence hurt the child's welfare, and that it was upon evidence tending to show these things that the exercise of discretion in favor of the welfare of the child could be done.

The intangible benefits to a child of intimate family associations are beyond the comprehension of the finite mind of any judge. There are things that the makers of our law have said would forfeit the legally vested right of a father to the custody of the child, and that department, not the judiciary, may add by constitutionally enacted law many other grounds for forfeiture. But for a mere mortal to say the father loses this lawful right because he believes it will promote the best interest of the child is to claim omnipotence. The best interest of the child is no more definable than is the expression "as long as a rope." Neither is meaningful until tested by known standards—as to the child, the law—and to the rope, lineal standard measurements such as inches and feet, etc.

Hitler-Germany, Communist Russia and Red China say the child belongs to the State which will promote its welfare better than mere parents. But America would renounce her belief in God if she so decreed. Here we believe the ideals and principles instilled by the parents do more to promote its welfare than State or judge can do. The controlling law on this question has been fixed by the full bench decisions beginning with *Bond v. Norwood,* 195 Ga. 383, supra, herein cited. Therefore, the contrary ruling by four Justices in this case can not change that law. It does two things—(1) unlawfully takes this child from its father, and (2) creates confusion in the law with the few that might not realize that it being in conflict with the older full bench decisions must yield to them and hence is not the law. While I prepared the opinion in *Bond v. Norwood,* 195 Ga. 383, supra, it accorded with the judgment of all my associates; yet former Chief Justice Jenkins prepared the opinion in *Watkins v. Terrell,* 196 Ga. 651, supra; Justice Atkinson prepared the opinion in *Morris v. Grant,* 196 Ga. 692, supra; and Justice Candler prepared the opinion in *Woods v. Martin,* 212 Ga. 405, supra; and all of their associates concurred. Justice Almand prepared the opinion in *Mills v. Mills,* 218 Ga. 686, supra, and all of the Justices, including Presiding Justice Head and Justices Mobley, Quillian and Grice, concurred. They were not guess work but the result of long and careful thought. They are entitled to respect, and the law demands that they be followed.

I am authorized to say that Mr. Justice Candler concurs in this dissent.